Lanzingee, J.
{¶ 1} This is the second time we have had this case before us. Previously, we remanded the cause to the Ninth District Court of Appeals to consider whether the trial court abused its discretion in admitting other-acts evidence under Evid.R. 404(B) during the trial of Carl M. Morris on two counts of rape of his minor stepdaughter. 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, reversing 2010-Ohio-4282, 2010 WL 3528992. On remand, the court of appeals vacated Morris’s conviction and ordered a new trial. Although there was no majority opinion, the court apparently found that the trial court did abuse its discretion by admitting impermissible evidence. One judge also determined that this error, coupled with the state’s repeated references to the improper character evidence, violated Morris’s due-process right to a fair trial, concluding that there was “a reasonable possibility that the improper evidence may have contributed to the conviction” and therefore that the error could not be determined to be harmless beyond a reasonable doubt. 2012-Ohio-6151, 985 N.E.2d 274, ¶ 60.
{¶ 2} We now affirm the judgment of the court of appeals that the appropriate remedy for the improper admission of other-acts evidence under Evid.R. 404(B) in this case is a new trial.
The Evidence at Trial
{¶ 3} The state charged Morris with two counts of rape of his minor stepdaughter, S.K., under R.C. 2907.02, a first-degree felony.

Testimony ofS.K.

{¶ 4} S.K. was 15 at the time of trial and testified to events that allegedly occurred when she was six or seven when she lived with her mother, older half- *401 sister, grandmother, and stepfather Morris. She testified to Morris’s card tricks and magic tricks that included asking her to touch his thumb, which was covered by a towel. He would then make his thumb turn to Jell-0 and then get hard again. S.K. asserted that Morris’s “thumb” was actually his penis. She testified that Morris began lying by her on the couch masturbating, while he rubbed her thigh. When she was in the first grade, Morris began touching her vagina with his hand. S.K. testified that Morris sexually molested her as many as 30 times and that every time, he ejaculated into a towel. Morris told her not to tell anyone what he was doing.
{¶ 5} S.K. testified that she could not recall all the dates, but recalled two specific times that Morris raped her. The first occurred on April 22, 2003, on the day that her mother went to the hospital. She was then nine. A second rape occurred late in October 2005, which she recalled because she was watching a Halloween television show. As she grew older, she began to realize that Morris’s conduct was improper.
{¶ 6} When asked if Morris’s actions were ever interrupted, S.K. testified that one time, her sister came “hurtling down the stairs,” causing Morris to jump and cover himself. S.K. remembered another incident when she and Morris were on the couch and he had a hand down his pants and the other on her thigh, and her mother came down the stairs silently and called out Morris’s name, which caused him to jump.
{¶ 7} After her grandmother died in September 2006, S.K. testified, she rebuffed Morris’s advances and he eventually stopped. Shortly before Christmas 2007, six months after Morris moved out of the house, S.K. told her parents that Morris had raped her.

Testimony ofS.K’s Sister

{¶ 8} S.K’s sister testified that in 2005 when she was 19, Morris had grabbed her and stated: “You don’t know what I would do to you but your mother would get mad.” Although she believed that Morris’s statement was sexual in nature, she “laughed it off,” thinking he was intoxicated.
{¶ 9} At this point, Morris objected to the line of questioning on the grounds that it was prejudicial. The court admitted the testimony under Evid.R. 404(B) to prove “motive, opportunity, intent, preparation, plan, knowledge, or absence” and offered to give a cautionary instruction to the jury prior to the jury’s deliberation; the defense accepted that offer. S.K’s sister then testified that Morris apologized the next day, explaining that he had been drunk. She confirmed that she had seen Morris drinking the night of the incident. She also testified that when she told her mother about the incident, Morris was kicked out of the house for a day. Finally, the sister testified that although Morris and S.K. *402 had been close, seeing them under a blanket together made her feel uncomfortable.

Testimony of S.K ’s Mother

{¶ 10} S.K.’s mother confirmed that Morris performed magic tricks for the family. She testified that one night she came downstairs, causing both Morris and S.K. to jump off the sofa “real quick,” and that S.K. went to the bathroom. She asked her daughter if everything was ok, and S.K. said yes. The mother testified that she suspected that something was happening between S.K. and Morris but that she believed S.K.’s response.
{¶ 11} S.K’s mother also testified that if she refused to have sex with Morris, he sometimes kicked the dog. Finally, she testified that Morris ejaculated into a tee shirt or a towel after they had sex. Morris objected. The trial court overruled his objection, but permitted a continuing objection to the line of inquiry regarding the sexual relationship between Morris and S.K’s mother. The state argued that because Morris allegedly engaged in this behavior with both S.K. and her mother, it was evidence of his “modus operandi, knowledge, and other acts of evidence.” The trial court agreed with the state and admitted this evidence under Evid.R. 404(B).
{¶ 12} In testifying that shortly before Christmas 2007 she and S.K’s father were told of Morris’s sexual molestation of S.K., S.K.’s mother stated that she “never saw [S.K.] like that. She was so upset. She was red and pulling her head and crying.”

Testimony of Dr. Keck

{¶ 13} Dr. Gregory Keck, a psychologist, testified that during treatment with him S.K. stated that she had been sexually abused by Morris. She also told Dr. Keck about Morris’s magic trick in which he used a towel to cover his “thumb.” Dr. Keck testified that although he could not be certain whether a patient was telling the truth, he had no reason to disbelieve S.K’s assertions regarding Morris. Dr. Keck testified that use of magic tricks is a method that pedophiles use to groom their victims for sexual activity.

Prosecutor’s Statements

{¶ 14} During closing argument, the prosecutor discussed Morris’s propositioning of S.K’s sister, stating that she was
[t]oo smart for [Morris], maybe too old too, I don’t know. You see, she looked pretty young. * * * She would know what’s wrong but you see even when his inhibitions were down when he would be drunk, if you want to know a little bit about, and there will be an instruction on this, if you *403 want to know a little bit about his motives and his intent and his intent for this victim, just look at how he treated his other stepdaughter * * *.
(Emphasis added.)
{¶ 15} In his closing, defense counsel addressed Morris’s propositioning of S.K’s sister by saying, “Did you hear anything about [Morris] ever sexually coming on to her over the course of many years? Absolutely not.” Later, he stated: “It’s easy to isolate a particular theme within a particular context and say that this is further evidence of somebody who would engage in sexual molestation.”
{¶ 16} In his rebuttal, the prosecutor referred to the sister as being the victim of a “sexual come-on” by Morris.

Jury Instruction

{¶ 17} After the closing arguments concluded, the trial judge gave the jury the following instruction:
Evidence received about the commission of acts other than the offense with which the Defendant is charged in this trial. The evidence was received only for a limited purpose. It was not received, and you may not consider it, to prove the character of the Defendant in order to show that he acted in conformity or in accordance with that character. If you find that the evidence of other crimes or acts is true and that the Defendant committed it, you may consider that evidence only for the purpose of deciding whether it proves the absence of mistake or accident, or the Defendant’s motive, opportunity, intent or purpose, preparation or plan to commit the offense charged in this trial or knowledge or circumstances surrounding the offense charged in this trial or the identity of the person who committed the offense in this trial.
That evidence cannot be considered for any other purpose.
The jury convicted Morris of both counts of rape.
Procedure on Appeal

First Appellate Review

{¶ 18} On appeal, Morris argued that the proposition evidence and the evidence that he kicked the dog were admitted in contravention of Evid.R. 404(B). The court of appeals in a two-to-one decision held that the evidence was not admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident and that the trial court erred in admitting this evidence. 2010-Ohio-4282, 2010 WL 3528992, at ¶ 25, 32. The *404 court of appeals said that S.K’s mother’s testimony that Morris would kick the dog out of sexual frustration should have been excluded because it had no relevance to any fact at issue in the case and was intended only to show defendant’s character as mean and aggressive. The court also said that the sexual-proposition testimony from S.K.’s sister should have been excluded because the challenged testimony did not describe how the other act was a part of a single criminal transaction involving the criminal charges but instead described a wholly unrelated incident. It therefore reversed Morris’s convictions, remanding the case for a new trial. Id at ¶ 44.
{¶ 19} We accepted the state’s appeal, in which the state asserted that “the court of appeals erred in applying a de novo standard of review to the admissibility of ‘other acts’ evidence and substituted its own judgment for that of the trial court.” 128 Ohio St.3d 1448, 2011-Ohio-1618, 944 N.E.2d 697. We held, “Trial court decisions regarding the admissibility of other-acts evidence under Evid.R. 404(B) are evidentiary determinations that rest within the sound discretion of the trial court. Appeals of such decisions are considered by an appellate court under an abuse-of-discretion standard of review.” 132 Ohio St.3d 337, 2012-0hio-2407, 972 N.E.2d 528, syllabus. Accordingly, we reversed the judgment of the court of appeals and remanded the matter to the court of appeals “to apply an abuse-of-discretion standard.” Id at ¶ 23.

Second Appellate Review

{¶ 20} On remand, the court of appeals again reversed the conviction. An opinion by Judge Dickinson stated that the trial court had abused its discretion in admitting the proposition evidence and the kick-the-dog evidence. 2012-Ohio-6151, 985 N.E.2d 274, ¶ 40, 44. Quoting this court’s decision in State v. Bayless, 48 Ohio St.2d 73, 106, 357 N.E.2d 1035 (1976), vacated on other grounds, 438 U.S. 911, 98 S.Ct. 3135, 57 L.Ed.2d 1155 (1978), the opinion stated that the court could hold that the erroneously admitted other-acts evidence was harmless only if it could “ ‘declare a belief that the error was harmless beyond a reasonable doubt.’ ” Id at ¶ 50. Judge Dickinson concluded, “The State’s repeated references to improper character evidence violated Mr. Morris’s right to a fair trial.” Id. at ¶ 60.
{¶ 21} We accepted the state’s appeal. The state’s proposition of law is “When reviewing allegedly erroneous admission of evidence, an appellate court should analyze whether substantial other evidence supports the verdict.” 136 Ohio St.3d 1406, 2013-Ohio-2645, 989 N.E.2d 1021.
Legal Analysis

Harmless Error

{¶ 22} The parties distinguish the standard of review of harmless error based on whether the rights affected by the error are constitutional or nonconstitutional *405 rights. The state argues that improper admission of Evid.R. 404(B) evidence does not involve the violation of a constitutional right and therefore that the nonconstitutional harmless-error standard of review set out in State v. Webb, 70 Ohio St.3d 325, 335, 638 N.E.2d 1023 (1994), applies. Webb held that nonconstitu-tional error is harmless if there is substantial other evidence to support the guilty verdict. On the other hand, Morris argues that the erroneously admitted Evid.R. 404(B) evidence prejudicially violated his right to a fair trial, requiring application of the constitutional harmless-error standard of review set out in State v. Crawford, 32 Ohio St.2d 254, 255, 291 N.E.2d 450 (1972), which held that constitutional error is harmless if it is harmless beyond a reasonable doubt.
{¶ 23} But in actuality, the Ohio Rules of Criminal Procedure do not specifically use the words “constitutional” or “nonconstitutional” to divide the standard of review in this way. Crim.R. 52(A) defines harmless error in the context of criminal cases and provides: “Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded.” During a harmless-error inquiry, the state has the burden of proving that the error did not affect the substantial rights of the defendant. State v. Perry, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 15. Furthermore, if there is “a ‘[deviation from a legal rule,’ ” courts undertake a “ ‘harmless error’ inquiry — to determine whether the error ‘affect[ed] substantial rights’ of the criminal defendant.” State v. Fisher, 99 Ohio St.3d 127, 2003-0hio-2761, 789 N.E.2d 222, ¶ 7, quoting United States v. Olano, 507 U.S. 725, 732-733, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). The term “substantial rights” has been interpreted to require that “ ‘the error must have been prejudicial.’ (Emphasis added.)” Id., quoting Olano at 734. If a court determines that the error did not affect the defendant’s substantial rights, then the error is harmless and “ ‘shall be discarded.’ ” Id., quoting Crim.R. 52(A).
{¶ 24} Thus Crim.R. 52(A), the harmless-error rule, was created in essence to forgive technical mistakes. But rather than distinguish between constitutional and nonconstitutional rights, the rule asks whether the rights affected are “substantial.” And the second important question is what happens if substantial rights are affected. Not every error requires that a conviction be vacated or a new trial granted. R.C. 2945.83 states:
No motion for a new trial shall be granted or verdict set aside, nor shall any judgment of conviction be reversed in any court because of:
(C) The admission or rejection of any evidence offered against or for the accused unless it affirmatively appears on the record that the accused was or may have been prejudiced thereby.
*406 (Emphasis added.)
{¶ 25} And so the real issue when Evid.R. 404(B) evidence is improperly admitted at trial is whether a defendant has suffered any prejudice as a result. If not, the error may be disregarded as harmless error. And while courts may determine prejudice in a number of ways and use language that may differ, they focus on both the impact that the offending evidence had on the verdict and the strength of the remaining evidence. Both the error’s impact on the verdict and the weight of the remaining evidence must be considered on appellate review.

Ohio Case Law

{¶ 26} We disagree with the state’s position that Ohio law is inconsistent on harmless error. Erroneous admission of Evid.R. 404(B) evidence is a singular problem. “Prosecution evidence that a defendant has committed other crimes, wrongs or acts independent of the offense for which he is on trial is not generally admissible to demonstrate that the defendant has a propensity for crime or that his character is in conformity with the other acts.” State v. Mann, 19 Ohio St.3d 34, 482 N.E.2d 592 (1985), paragraph one of the syllabus. The question is whether an improper admission affects the defendant’s “substantial rights” so that a new trial is required as a remedy. Several principles emerge from our cases.
{¶ 27} First, there must be prejudice to the defendant as a result of the admission of the improper evidence at trial. “[A] judgment of conviction should not be reversed because of ‘the admission * * * of any evidence offered against * * * the accused unless it affirmatively appears on the record that the accused was or may have been prejudiced thereby.’ ” Crawford, 32 Ohio St.2d at 255, 291 N.E.2d 450, quoting R.C. 2945.83(C). Compare State v. Abrams, 39 Ohio St.2d 53, 56, 313 N.E.2d 823 (1974) (same requirement in considering improper judge-jury communications).
{¶ 28} Second, an appellate court must declare a belief that the error was not harmless beyond a reasonable doubt. Id.; Crawford; Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); State v. Bayless, 48 Ohio St.2d 73, 106, 357 N.E.2d 1035 (1976), vacated in part on other grounds, 438 U.S. 911, 98 S.Ct. 3135, 57 L.Ed.2d 1155 (1978); accord State v. Lytle, 48 Ohio St.2d 391, 358 N.E.2d 623 (1976), paragraph three of the syllabus (“Error in the admission of other act testimony is harmless when there is no reasonable possibility that the testimony contributed to the accused’s conviction”), vacated in part on other grounds, 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154 (1978).
{¶ 29} Third, in determining whether a new trial is required or the error is harmless beyond a reasonable doubt, the court must excise the improper evidence *407 from the record and then look to the remaining evidence. In a case dealing with the improper admission of privileged spousal testimony, we stated that “ ‘the eases where imposition of harmless error is appropriate must involve either overwhelming evidence of guilt or some other indicia that the error did not contribute to the conviction.’ ” State v. Rahman, 28 Ohio St.3d 146, 151, 492 N.E.2d 401 (1986), quoting State v. Ferguson, 5 Ohio St.3d 160, 166, 450 N.E.2d 265 (1983), fn. 5. But in reviewing the remaining evidence, we cautioned, “We are also mindful that our role upon review of this ease is not to sit as the supreme trier of fact, but rather to assess the impact of this erroneously admitted testimony on the jury.” Id. at fn. 4.
{¶ 30} Here, the lead opinion of the Ninth District Court of Appeals considered both the prejudice to Morris and the remaining evidence. It determined that the trial court had erroneously admitted inflammatory Evid.R. 404(B) evidence in a case that was not strong. There was no physical evidence, and there were questions regarding the credibility of Morris’s stepdaughter S.K., the main witness. Furthermore, the opinion emphasized that the state had repeatedly referred to the evidence in its closing argument. These improper statements were thus highlighted for the jury. Given the weakness of the evidence that remained, the opinion deemed that a new trial was necessary because the court could not find beyond a reasonable doubt that the improper evidence had no effect. The only remedy for the prejudice was a new trial.
{¶ 31} We ourselves have considered that the actions of a prosecutor may combine with an evidentiary error to cause greater impact. In a capital case in which we vacated a death sentence and remanded the case for resentencing pursuant to R.C. 2929.06, the trial court had allowed gruesome slides to be admitted into evidence during the guilt phase. State v. Thompson, 33 Ohio St.3d 1, 15, 514 N.E.2d 407 (1987). Although the conviction was unaffected, in considering the penalty phase when the prosecutor emphasized this evidence, we stated:
The prosecutor’s subsequent reference to those same slides at the penalty phase was impermissible. * * * [H]is entreaty that the jury should remember the slides could have had no other effect than to cause the jurors to re-experience the horror and outrage they must have felt upon viewing the slides earlier in the trial. This later use of the slides to appeal to the jurors’ emotions and to prejudice them against the appellant is grounds for reversal.

Id.

{¶ 32} In other words, blatant prejudice may override even a strong case and require a new trial. As noted, however, an improper evidentiary admission under *408 Evid.R. 404(B) may be deemed harmless error on review when, after the tainted evidence is removed, the remaining evidence is overwhelming. State v. Williams, 6 Ohio St.3d 281, 290, 452 N.E.2d 1323 (1983), quoting Harrington, 395 U.S. at 254, 89 S.Ct. 1726, 23 L.Ed.2d 284.
The Webb Case
{¶ 33} The state relies upon the statement that “[njonconstitutional error is harmless if there is substantial other evidence to support the guilty verdict.” State v. Webb, 70 Ohio St.3d at 335, 638 N.E.2d 1023. As indicated earlier, both the nature of the error and the prejudice to defendant (the measure of how the error affected the verdict) are important. Appellate judges upon review determine these issues and decide which trial errors are harmless and which instead necessitate the remedy of reversal and new trial. Although the language used by the courts may vary, the principles themselves are clear: That is, technical error will be ignored under Crim.R. 52(A); structural error will result in automatic reversal, Fisher, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222; and evidence errors that are prejudicial because they improperly affect the verdict will be excised from the record with the remaining evidence weighed to see if there is evidence beyond a reasonable doubt of the appellant’s guilt, Rahman, 23 Ohio St.3d at 150, 492 N.E.2d 401. Therefore, we hold that in determining whether to grant a new trial as a result of the erroneous admission of evidence under Evid.R. 404(B), an appellate court must consider both the impact of the offending evidence on the verdict and the strength of the remaining evidence after the tainted evidence is removed from the record.
Conclusion
{¶ 34} The Ninth District has twice reviewed the record and held that this evidence was improperly admitted. We affirm the judgment of the court of appeals vacating the conviction and granting a new trial.
Judgment affirmed.
O’ConnoR, C.J., and Pfeifer and O’Neill, JJ., concur.
O’Donnell, Kennedy, and FRENCH, JJ., dissent.