[Cite as *State v. Sellers*, 2015-Ohio-4843.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-140655 |
| | | TRIAL NO. B-1100989 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| TIMOTHY SELLERS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: November 25, 2015

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Ronald W. Springman*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Timothy J. McKenna* for Defendant-Appellant.

Please note: this case has been removed from the accelerated calendar.

**STAUTBERG, Judge.**

{¶1} Following a bench trial, defendant-appellant Timothy Sellers was found guilty of the 1990 aggravated murder of Lillian Curtis. The trial court sentenced him to life in prison, with parole eligibility after 20 years. This appeal followed.

### The Lillian Curtis Murder

{¶2} In 1990, 51-year-old Curtis was found dead on the fifth floor of an abandoned building that was located in the Over-the-Rhine neighborhood of Cincinnati. Police officer Kerry Rowland was one of the officers who had responded to the scene of Curtis's death in 1990. At Sellers's 2014 trial, Rowland testified that Curtis's body was found lying on the floor of a gutted room in an abandoned building, and that it appeared as if Curtis's pants had been forcibly removed, because one of her pant legs was off, and the other still on. The lower half of Curtis's body was partially exposed, and her underwear was blood-soaked. Rowland recalled seeing two cigarette butts lying close to Curtis's body. Rowland testified that the cigarette butts were collected as evidence.

{¶3} Rowland further testified that in 1990 Sellers had been the primary suspect in this case. Rowland interviewed Sellers at that time. Sellers denied any involvement, and offered police an alibi. Rowland testified that Sellers's alibi proved to be false.

{¶4} An autopsy later revealed that Curtis had been raped before dying from injuries she sustained from blunt force trauma to her head. Curtis's death was ruled a homicide. The deputy coroner who conducted the autopsy, Amy Martin, was unable to detect the presence of any semen on Curtis, but vaginal swabs were taken

from Curtis's body and saved as evidence in a freezer at the Hamilton County Coroner's lab.

{¶5} No one was charged in 1990 in connection with Curtis's death.

## The Pauline Dunkman Case

{¶6} Approximately six weeks after Curtis was found dead, Rowland became involved in the investigation of the death of a 63-year-old woman named Pauline Dunkman. Dunkman was found by police early one morning, unclothed and wandering down a street. She had feces smeared on her, and she was bleeding. Dunkman had been anally and vaginally raped. She suffered extensive physical trauma as a result. Dunkman subsequently died of an infection stemming from the wounds that she had sustained from the rape.

{¶7} Sellers was questioned regarding the incident and initially denied involvement and denied knowing who Dunkman was. He offered police a false alibi. However, after being confronted with fingerprint evidence placing him at the scene, Sellers confessed to police that he had had sexual intercourse with Dunkman, but that he had become frightened and left when she had started bleeding. Sellers was eventually convicted of rape and involuntary manslaughter in connection with Dunkman's death.

## A Cold Case is Reopened

{¶8} Due to advances in technology, Joan Burke, a serologist and DNA analyst from the Hamilton County Coroner's Office, was able to extract a DNA sample from sperm cells found on Curtis's vaginal swabs in 2002. She entered the profile into the Combined DNA Indexing System ("CODIS"). In 2010, in connection with a different matter, Burke received and processed a DNA sample from Sellers. It matched the DNA found on Curtis's vaginal swabs. It also matched DNA found on

one of the cigarette butts recovered from the scene of the crime. Sellers was subsequently indicted for aggravated murder.

## The 2014 Trial

{¶9} At Sellers's trial, Rowland testified in great detail concerning the Dunkman case over defense counsel's objection. The state also presented the testimony of Burke, who testified the DNA from the sperm cells found on Curtis's vaginal swabs matched Sellers's DNA sample, as did DNA that Burke extracted off of one of the cigarette butts that had been found close to Curtis's body at the scene of the crime in 1990.

{¶10} The state also submitted to the trial court the deposition testimony of Amy Martin, the Assistant Hamilton County Coroner who had pronounced Curtis dead at the scene, and who had performed Curtis's autopsy. Martin testified that Curtis had been raped and then died from injuries sustained by blunt force trauma to the head. She provided the court with graphic details concerning the wounds that Curtis had sustained. Martin had also performed an autopsy on Dunkman, and testified in graphic detail concerning wounds to Dunkman's vaginal and anal regions. According to Martin, Dunkman died from an infection resulting from her wounds.

## Assignments of Error

{¶11} Sellers raises six assignments of error, several of which were argued together.

## Other Acts Evidence and the Dunkman Case

{¶12} In his first assignment of error, Sellers claims that the trial court abused its discretion and prejudiced him when it allowed the facts of the Dunkman case into evidence. Sellers is correct.

{¶13} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Evid.R. 404(B); *see State v. Curry*, 43 Ohio St.2d 66, 68, 330 N.E.2d 720 (1975). There are multiple reasons for this prohibition. Among them is the concern that an accused will be convicted of a charge " 'merely because he is a person likely to do such acts.' " *Curry* at 68, quoting *Whitty v. State*, 34 Wis.2d 278, 292, 149 N.W.2d 557 (1967). Another concern is " 'the confusion of issues which might result from bringing in evidence of other crimes.' " *Id.*

{¶14} Under limited circumstances, such evidence may be admissible "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B); *see* R.C. 2945.59. These exceptions are to be construed against admissibility, and the standard for determining admissibility is strict. *State v. Broom*, 40 Ohio St.3d 277, 282, 533 N.E.2d 682 (1988). We review the trial court's decision to allow "other acts" into evidence under an abuse-of-discretion standard. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, syllabus.

{¶15} Here, the state contends that evidence of Sellers's other crimes served as proof of his identity as Curtis's killer. " 'Other acts' may be introduced to establish the identity of a perpetrator by showing that he has committed similar crimes and that a distinct, identifiable scheme, plan, or system was used in the commission of the charged offense." *State v. Smith*, 49 Ohio St.3d 137, 141, 551 N.E.2d 190 (1990). The "other acts" must be " 'so similar to the crime charged and sufficiently idiosyncratic that it tends to prove the same person committed both acts.' " *State v. Kelley*, 1st Dist. Hamilton No. C-140112, 2014-Ohio-5565, ¶ 5, quoting *State v. Morris*, 2012-Ohio-6151, 985 N.E.2d 274, ¶ 18 (9th Dist.), *aff'd*, *State v. Morris*, 141

5

Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153; *see State v. Lowe*, 69 Ohio St.3d 527, 530-31, 634 N.E.2d 616 (1994); *State v. Cobia*, 1st Dist. Hamilton No. C-140058, 2015-Ohio-331, ¶ 15-18.

**{¶16}** The state argues that the facts of the Dunkman case were properly admitted to show that Sellers was the perpetrator in the Curtis case, because (1) both Dunkman and Curtis were substantially older than Sellers, (2) Dunkman and Curtis were "homeless types" and each frequented bars in the same neighborhood, (3) both women were viciously raped in vacant buildings a few blocks from each other, (4) Sellers initially denied involvement in both cases and tried to establish alibis that later proved false, and (5) each victim died from injuries inflicted by Sellers.

**{¶17}** We are not persuaded that the facts are sufficient to fit the exception in Evid.R. 404(B). First, the record reflects that these women were not both found in vacant buildings. Curtis was found, dead, in a vacant building. Dunkman was found, alive, walking down the street after having been raped in an alleyway. While Rowland initially testified that the crime scenes were a few blocks apart, upon further questioning he stated that they were approximately one mile apart. Second, an element of the crimes at issue—here a death caused by the defendant—in no way tends to establish identity. The manner in which each victim died was not sufficiently idiosyncratic and similar for admissibility under Evid.R. 404(B).

**{¶18}** In regard to the nature of the rapes, Martin testified that both Curtis and Dunkman suffered extensive damage to their vaginas, but Martin also testified that there was nothing else that would tend to connect the two rapes. Dunkman was anally and vaginally raped. Curtis was vaginally raped, only. And Martin testified that there were "differences in the overall patterns of the injuries."

6

{¶19} Considering the remaining similarities advanced by the state, i.e., that both women were significantly older than Sellers, that both frequented bars in the same area, that both were "homeless types," and that Sellers initially attempted to establish an alibi in each case, we hold that this is insufficient to establish "a distinct, identifiable scheme, plan, or system" tending to show identity. *Compare State v. Myers*, 97 Ohio St.3d 335, 2002-Ohio-6658, 780 N.E.2d 186, ¶ 105. In this case, there was simply nothing sufficiently idiosyncratic about these cases that would tend to show that the same person was the perpetrator in each.

{¶20} We therefore hold that the trial court abused its discretion when it allowed "other acts" testimony concerning the Dunkman case into evidence. However, given the other evidence of record in the case, we find this error to be harmless.

{¶21} "In determining whether to grant a new trial as a result of the erroneous admission of evidence under Evid.R. 404(B), an appellate court must consider both the impact of the offending evidence on the verdict and the strength of the remaining evidence after the tainted evidence is removed from the record." *State v. Morris,* 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, syllabus.

{¶22} In this case, the trial court spoke in detail concerning the gruesome nature of the Dunkman case and compared it to this case immediately before it announced that it had found Sellers guilty of aggravated murder. We therefore find that the "other acts" evidence impacted the court's guilty finding. However, the balance of the remaining evidence, discussed below, is strong enough to uphold Sellers's conviction. Thus, the abuse of discretion in allowing testimony concerning the Dunkman case is harmless error, and Sellers's first assignment of error is overruled.

{¶23} In his second assignment of error, Sellers contends that the trial court abused its discretion when it allowed "other acts" into evidence because, even if this court were to determine that the evidence was properly admitted, it was unfairly prejudicial and should have been excluded under Evid.R. 403(A). Resolution of the first assignment of error renders this one moot. We therefore decline to address it. *See* App.R. 12(A)(1)(c).

## Sufficiency and Weight of the Evidence

{¶24} In his third and fourth assignments of error, Sellers challenges the sufficiency and the weight of the evidence, respectively.

{¶25} In a challenge to the sufficiency of the evidence, the question is whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In regard to the weight of the evidence, we review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶26} In this case, Burke testified that Sellers's DNA profile matched the DNA profile created from semen found on Curtis's vaginal swabs, and that Sellers's DNA also matched DNA extracted from a cigarette butt that had been discovered at the scene of Curtis's death, lying close to her body. Martin testified that Curtis had been raped, and that she had been killed by blunt force trauma to her head. Martin stated that Curtis had been killed in the abandoned building where her body was found. This was sufficient evidence to convict Sellers of aggravated murder.

**{¶27}** In regard to the manifest weight of the evidence, Sellers's defense centered on a theory that he had had consensual sexual intercourse with Curtis some time before her death, and that his semen had remained in her body for several days. Upon a review of the entire record, weighing the evidence presented, and considering the credibility of the witnesses, we hold that the trial court did not lose its way in weighing the evidence presented so as to create a manifest miscarriage of justice.

**{¶28}** Sellers's third and fourth assignments of error are overruled.

## Motion to Suppress

**{¶29}** In his fifth assignment of error, Sellers claims that the trial court erred when it overruled his motion to suppress statements that he made to Detective Rowland, because Sellers had not waived his *Miranda* rights prior to being questioned.

**{¶30}** Sellers was questioned by police multiple times in connection with Curtis's death. The only custodial interrogation that occurred without any indication that Sellers had waived his *Miranda* rights happened on May 9, 1990. During the May 9, 1990 interview, Sellers denied involvement in the Curtis case. Sellers told Rowland that he was willing to give a blood sample and to take a polygraph test to exonerate himself if necessary.

**{¶31}** Before the trial court ruled on Sellers's motion to suppress, defense counsel stated on the record that Sellers was not seeking to suppress any statements that he had made denying involvement. Consequently, any error in the trial court's ruling has been waived. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 20.

**{¶32}** We overrule Sellers's fifth assignment of error.

## Jail-Time Credit

{¶33} In his sixth and final assignment of error, Sellers claims that the trial court violated his constitutional right to be free from cruel and unusual punishment when it did not award him days of jail-time credit in this case starting from his incarceration in 1990 when he was being held on charges in the Dunkman case. Sellers argues that he would have been indicted in 1990 had the technology existed to link him to the Curtis murder. He further surmises that the Dunkman and Curtis cases would have been tried together, and that Sellers would have been sentenced at the same time for both crimes. Sellers argues that he therefore should receive jail-time credit starting from the time he was incarcerated on the Dunkman case. In support of this argument against "cruel and unusual punishment," Sellers also cites the Equal Protection Clause "and a sense of fairness through equity."

{¶34} Sellers's argument concerning what may or may not have happened had Sellers been indicted in 1990 is highly speculative. We cannot decide a case based upon facts that never occurred. And it is well-settled that jail-time credit applies only to the time that a defendant was confined arising out of the offense for which the defendant was convicted and sentenced. *See* R.C. 2967.191.

{¶35} Sellers's sixth assignment of error is overruled. The trial court's judgment is affirmed.

Judgment affirmed.

**CUNNINGHAM, P.J.,** and **FISCHER, J.**, concur.

Please note:

The court has recorded its own entry this date.