[Cite as *State v. Lee*, 2016-Ohio-1045.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  | : | JUDGES: |
| STATE OF OHIO | : | Hon. Sheila G. Farmer, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 15-CA-52 |
| TERRY L. LEE | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal appeal from the Richland County
Court of Common Pleas, Case No.
2014CR0711R

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     March 14, 2016

APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

DANIEL ROGERS                      RANDALL FRY
Assistant Prosecuting Attorney         10 West Newlon Place
38 S. Park Street                      Mansfield, OH 44902
Mansfield, OH 44902

*Gwin, J.*

{¶1} Defendant-appellant Terry L. Lee ["Lee"] appeals his conviction and sentence after a jury trial in the Richland County Court of Common Pleas on one count of murder with a firearm specification.

*Facts and Procedural History*

{¶2} At approximately 10:00 a.m. on September 24, 2014, Evelyn Taylor, while sitting in her home at the corner of Rae and Heineman Avenue, witnessed a white vehicle with a Caucasian female driver and an African-American male passenger driving slowly towards Rowland Avenue.

{¶3} Shortly before 12:00 p.m. on September 24, 2014, Charles Matthews parked his tan Chevrolet Tahoe in front of 133 Rowland Avenue. Shortly thereafter, Ms. Lashonda Robertson, who lives at 132 Rowland Avenue, parked her car approximately 10 feet behind the Tahoe. As she was parking, Ms. Robinson noticed a white Chevrolet Cavalier driving on Rowland Avenue. A Caucasian woman was driving the car and an African-American male was sitting in the back seat of the automobile. Ms. Robertson saw the passenger stick his head out of the driver's side window and call out to Matthews. The white Cavalier then pulled in next to the Tahoe. The male passenger, later identified as Lee, then exited the white Cavalier, approached the front driver's side window of the Tahoe and began arguing with Matthews. Lee then reached inside the Tahoe through the driver's side window and began tussling with Matthews. After briefly tussling with Matthews, Lee stepped back, reached inside the waistband of his pants, grabbed his gun and shot Matthews twice, with one bullet striking Matthews' back and the other striking his left hip. Lee ran back to the white Cavalier and fled the scene. Matthews attempted

to drive away. However, he could only put the Tahoe in neutral, which resulted in the Tahoe rolling downhill on Rowland and crashing into a stopped box truck driven by Donald Darst at the intersection of Rowland and Fourth Street.

{¶4} At 12:20 p.m., Mansfield Fire Department personnel ["MFD"] arrived at the scene and transported Matthews to the hospital. Prior to Mr. Matthews being transferred to the operating room, Jenna Berry, a nurse at MedCentral, discovered a bullet fragment on the bed underneath Mr. Matthews' body. Ms. Berry turned over the bullet fragment to the police.

{¶5} After Matthews was removed from the scene, Mansfield Police Officer Ronee Swisher taped off and photographed the scene of the accident, while Officer Rick Clapp walked along Rowland Avenue looking for evidence. Officer Clapp discovered a spent shell casing and a black cell phone charger cord in front of 133 Rowland Avenue.

{¶6} In a taped statement, Ms. Robertson described the shooting and gave a general description of the shooter and the vehicle. Ms. Robertson's boyfriend Antonio Ulis also witnessed the shooting. In his taped statement, Ulis identified the shooter's vehicle as a white, two-door Chevy Cavalier with rust on the bottom of the doors and whose license plate number had "52" in the middle.

{¶7} Detective Dave Scheurer relayed the information provided by Ulis to Detective Steve Blust. Detective Blust provided Detective Scheurer with the name Kaitlyn Maher, which Detective Scheurer subsequently provided to the dispatch supervisor Jerry Botdorf. Botdorf ran a LEADS check and determined that Ms. Maher was the registered owner of a 1998 white Chevy Cavalier with license plate number GVX 5236. Based on

this information, Detective Scheurer asked Botdorf to put out an "attempt to locate" to surrounding law enforcement agencies on the white Cavalier.

{¶8} After hearing the attempt to locate on a police scanner, Ms. Maher called and requested to speak with a detective. Maher provided a statement to Detective Scheurer implicating Lee.

{¶9} Based on Ms. Maher's statement, Detective Scheurer obtained a photograph of Lee. Detective Chris Brunk administered photo lineups to Robertson and Ulis. After going through the lineup two times, Robertson identified Lee as the man who shot Mr. Matthews with 90% accuracy. Ulis also identified Lee as the shooter, albeit less definitively. (4T. at 435).

{¶10} After processing the crime scene, the Tahoe was towed and a search warrant was obtained. While searching the Tahoe, a second spent shell casing was discovered.

{¶11} On September 25, 2014, Detective Scheurer interviewed Shadonnica Grier, who Lee had picked up in the white Cavalier twice in the days leading up to the murder. Grier learned that the white Cavalier was involved in Matthews' murder via phone calls on September 24th from Kiera Hobbs and Asia Middlebrook and by reading the News Journal website. Grier told Detective Scheurer about Lee picking her up in the white Cavalier and about a phone call she received from Lee at approximately 2:00 p.m. on September 24. During her phone call with Lee, Ms. Grier asked, "why did you do it," to which Lee replied, "are you going to tell on me?" (6T. at 841).

{¶12} On September 26, 2014, Detective Scheurer discovered the white Cavalier at 460 Woodward Avenue in Mansfield, Ohio. Detective Scheurer had the white Cavalier

towed to MPD to be processed by Anthony Tambasco from MPD Crime Lab. While processing the white Cavalier, Mr. Tambasco photographed the vehicle, swabbed the steering wheel for touch DNA and recovered a white cell phone charger cord and a "floppy hat." Mr. Tombasco submitted all of the evidence recovered from the white Cavalier for further testing.

{¶13} On October 11, 2015, Jonathan Gardner from BCI issued a report stating that the spent shell casing recovered from Rowland Avenue and the spent shell casing recovered from inside the Tahoe came from bullets fired from the same gun.

{¶14} On October 3, 2015, U.S. Marshals and officers from the Northern Ohio Violent Fugitive Task Force located and arrested Lee in Renova, Mississippi. Detective Scheurer and Sergeant Carroll picked up Lee from the Bolivar County Jail in Mississippi and brought him back to Ohio. After extraditing Lee, Detective Scheurer and Sergeant Carroll obtained a search warrant for Lee's DNA.

{¶15} Dawn Fryback from the Crime Lab compared Lee's DNA sample and Ms. Maher's DNA sample to DNA profiles developed from the black cell phone charger cord found on Rowland Avenue on September 24, 2014, the white cell phone charger cord and the "floppy hat" found in the white Cavalier on September 26, 2014 and the swab of the steering wheel of the white Cavalier from September 26, 2014.

{¶16} Ms. Fryback determined with a reasonable degree of scientific certainty that Lee was the major contributor to the DNA mixtures developed from the steering wheel and the "floppy hat." Ms. Fryback also determined that Lee could not be excluded as the donor of the major profiles in the mixed DNA profiles developed from the black cell phone charger cord and the white cell phone charger cord. Ms. Fryback calculated the odds of

a random individual other than Lee contributing the major profile found in the DNA mixture on the white cell phone charger cord to be 1/328,500,000. Ms. Fryback calculated the odds of a random individual other than Lee contributing the major profile found in the DNA mixture on the black cell phone charger cord to be 1/17,790. In addition to her findings concerning Lee's DNA, Ms. Fryback also determined that Ms. Maher could be excluded as a possible contributor to any of the above-described DNA profiles.

{¶17} On November 6, 2014, a Richland County Grand Jury indicted Lee on two counts. Count 1 of the indictment charged Lee with Murder, an unclassified felony pursuant to R.C. 2903.02(A). Count 2 of the indictment charged Lee with Aggravated Murder, an unclassified felony pursuant to R.C. 2903.01(A). Both counts included firearm specifications pursuant to R.C. 2941.145.

{¶18} On May 7, 2015, Lee's trial counsel filed a "Motion in Limine" requesting the court bar the state from referencing Lee's aliases or discussing his prior convictions. On May 14, 2015, the trial court granted the motion.

{¶19} On May 15, 2015, Lee filed a second "Motion in Limine" asking the court to exclude the results of DNA analysis performed on a phone charger recovered from the murder scene and to exclude Evelyn Taylor's testimony. On May 18, 2015, prior to the start of voir dire in Lee's jury trial, the court overruled the second "Motion in Limine" in its entirety.

{¶20} On May 26, 2015, the jury found Lee guilty of Murder and the accompanying firearm specification and not guilty of Aggravated Murder. On May 29, 2015, the trial court sentenced Lee to a mandatory term of fifteen years to life for Murder and a

mandatory term of three years on the firearm specification, with those terms to run consecutively for a total mandatory term of eighteen years to life.

*Assignments of Error*

{¶21} Lee raises four assignments of error,

{¶22} "I. THE DEFENDANT APPELLANT WAS DENIED INEFFECTIVE [sic.] ASSISTANCE OF COUNSEL AND HIS CONVICTION WAS IN VIOLATION OF HIS SIXTH AMENDMENT RIGHT TO COUNSEL TO THE UNITED STATES CONSTITUTION AND SECTION TEN OF THE OHIO CONSTITUTION.

{¶23} "II. THE DEFENDANT APPELLANT WAS DENIED INEFFECTIVE [sic.] ASSISTANCE OF COUNSEL AND HIS CONVICTION WAS IN VIOLATION OF HIS SIXTH AMENDMENT RIGHT TO COUNSEL TO THE UNITED STATES CONSTITUTION AND SECTION TEN OF THE OHIO CONSTITUTION.

{¶24} "III. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ALLOWING TESTIMONY OF A WITNESS WHOSE IDENTITY WAS NOT DISCLOSED UNTIL THREE DAYS BEFORE THE TRIAL.

{¶25} "IV. THE TRIAL COURT ERRED BY ALLOWING HEARSAY TESTIMONY FROM THE WITNESS SHADONNICA GRIER."

I. & II.

{¶26} In his first assignment of error, Lee argues that his trial counsel provided ineffective assistance by failing to raise a Crim.R. 29 motion for acquittal with respect to the murder charge; in his second assignment of error, Lee argues that his trial counsel rendered ineffective assistance of counsel when he failed to object to Dawn Fryback's testimony

regarding her analysis of the black cell phone charger cord and, thus, failed to preserve the issue of appeal.

**{¶27}** A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180(1993); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373(1989).

**{¶28}** Counsel is unconstitutionally ineffective if his performance is both deficient, meaning his errors are "so serious" that he no longer functions as "counsel," and prejudicial, meaning his errors deprive the defendant of a fair trial. *Maryland v. Kulbicki,* 577 U.S. __, 2015 WL 5774453(Oct. 5, 2015) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

**Failure to make Crim. R. 29 motion.**

**{¶29}** Lee argues by failing to make a Crim.R. 29 motion for acquittal on the murder charge, Lee's trial attorney waived the right to have the trial court consider whether the state presented sufficient evidence to prove the murder charge. Further, trial counsel's failure to move for acquittal denied Lee the right to appeal the issue of whether the state did presented sufficient evidence on the murder charge.

**{¶30}** In *State v. Brown*, 5th Dist. Licking No. 2006-CA-53, 2007-Ohio-2005, this Court noted,

In the past, this court and numerous other Ohio appellate courts, relying primarily upon *State v. Roe* (1989), 41 Ohio St.3d 18, 25, 535 N.E.2d 1351, and *Dayton v. Rogers* (1979), 60 Ohio St.2d 162, 163, 14 O.O.3d 403, 398 N.E.2d 781, have held that if a criminal defendant fails to timely file a Crim. R. 29 motion for acquittal, the defendant waives any error, absent plain error, as to sufficiency of the evidence. See, e.g. *State v. Fisher* (May 3, 2006), 5th Dist. No. 05 CAA 04 020; *State v. Carrothers* (Aug. 24, 2005), 5th Dist. No.2004 AP 10 0067; *State v. Alicie* (April 13, 2005), 5th Dist. No. 04-CA-000020. "In two apparently little-recognized cases, however, the Ohio Supreme Court stated that a failure to timely file a Crim.R. 29(A) motion during a jury trial does not waive an argument on appeal concerning the sufficiency of the evidence. *See State v. Jones* (2001), 91 Ohio St.3d 335, 346, 744 N.E.2d 1163; *State v. Carter* (1992) 64 Ohio St.3d 218, 223, 594 N.E.2d 595. In both *Jones* and Carter, the Ohio Supreme Court stated that the defendant's 'not guilty' plea preserves his right to object to the alleged insufficiency of the evidence. Id. Moreover, because 'a conviction based on legally insufficient evidence constitutes a denial of due process,' *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541, a conviction based upon insufficient evidence would almost always amount to plain error". *State v. Barringer*, 11th Dist. No.2004-P-0083, 2006-Ohio-2649 at ¶ 59; *State v. Coe* (2003), 153 Ohio App.3d 44, 48-49, 2003-Ohio-2732 at ¶ 19, 790 N.E.2d 1222, 1225-26.

Thus, for purposes of this review, we do not consider appellant to have waived his right to argue sufficiency of the evidence on appeal. *Brown,* ¶ 35- ¶36; *Accord, State v. Schenker*, 5th Dist. Tuscarawas No. 2006AP050027, 2007-Ohio-3732, ¶35; *State v. Henderson*, 5th Dist. Richland No. 2013-CR-0409, 2014-Ohio-3121, ¶22; *State v. Shepherd,* 5th Dist. Richland No. 14CA63, 2015-Ohio-4330, ¶26.

**{¶31}** We find no errors rising to the level of *Bradley* and *Strickland* nor any deficiency in trial counsel's performance in failing to make a Crim.R. 29 motion, as he did not waive his right to contest the sufficiency of the evidence.

**Failure to object.**

**{¶32}** Lee next contends that his trial counsel rendered ineffective assistance by failing to object and therefore waiving for purposes of appeal Dawn Fryback's testimony regarding her analysis of the black cell phone charger cord. The black phone charger was found the day of the murder.

**{¶33}** Lee filed a motion in limine to exclude the report and testimony. The basis for Lee's objection to the testimony of Fryback was that the state did not provide Lee with the report of her analysis until five days before trial. Fryback's report indicated a mixture of DNA from at least two persons. Lee contends that had he received this DNA analysis report in a timely fashion, then he could have had the DNA tested independently and might have been able to identify the other person whose DNA was on the black phone charger.

**{¶34}** After conducting a hearing, the trial court overruled Lee's motion in limine finding that any delay in producing the report was because Fryback was on maternity leave from February 11, 2015 to April 20, 2015.

**{¶35}** Lee did not ask the trial court for a continuance to obtain an independent analysis of the DNA related to the black phone charger. Lee did not object to Fryback's testimony at trial.

**{¶36}** Crim. R. 16 provides in relevant part,

(K) Expert Witnesses; Reports. An expert witness for either side shall prepare a written report summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion, and shall include a summary of the expert's qualifications. The written report and summary of qualifications shall be subject to disclosure under this rule no later than twenty-one days prior to trial, which period may be modified by the court for good cause shown, which does not prejudice any other party. Failure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial.

(L) Regulation of discovery.

(1) The trial court may make orders regulating discovery not inconsistent with this rule. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material

not disclosed, or it may make such other order as it deems just under the circumstances.

**{¶37}** The trial court has discretion to select the proper procedure when a party fails to comply with a discovery order. Crim.R. 16(E)(3); *State v. Edwards*, 49 Ohio St.2d 31, 42, 358 N.E.2d 1051(1976), *overruled on other grounds* (1978), 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155(1978). "[T]rial courts are given much latitude in supervising pretrial discovery," *Edwards,* at 42. Their supervisory decisions will not be reversed but for an abuse of discretion. *State v. Parson*, 6 Ohio St.3d 442, 445, 453 N.E.2d 689(1983).

**{¶38}** To demonstrate an abuse of discretion, an appellant must show three elements. First, he must show that "the state's failure to disclose was a willful violation of Crim.R. 16 or anything other than a negligent omission on its part." *Parson*, 6 Ohio St.3d. at 445, 453 N.E.2d 689. Second, appellant must demonstrate "how foreknowledge of the nondisclosed statement would have benefited him in the preparation of his defense." *Parson,* 6 Ohio St.3d at 445, 453 N.E.2d 689. Finally, appellant must demonstrate the prejudicial effect of the Crim.R. 16 violation. *State v. Cooper*, 52 Ohio St.2d 163, 177, 370 N.E.2d 725, 733(1977), *vacated on other grounds*, 438 U.S. 911, 98 S.Ct. 3137, 57 L.Ed.2d 1157(1978).

**{¶39}** In this case, the trial court found that the delay in providing the report was not willful; rather the delay was caused by the fact that Fryback was on maternity leave and could not complete the DNA analysis between February 11, 2015 and April 20, 2015. On May 5, 2015, Lee's attorney went to the Mansfield Police Department Crime Lab, and at that time was informed that the phone charger was being tested for DNA and that the results would be released between May 5, 2015 and the actual trial date. Lee could have,

but did not, move for a continuance in order to have sufficient time to have an independent test performed. "In the absence of such a motion, the trial court properly concluded that defense counsel was prepared to go forward at that time. The trial court had, pursuant to Crim.R. 6(E)(3), the discretionary power to make such a determination." *State v. Edwards,* 48 Ohio St.2d at 43, 358 N.E.2d 1051; *Accord, State v. Bidnost,* 71 Ohio St.3d 449, 457, 1994-Ohio-465, 644 N.E.2d 318.

**{¶40}** We find no errors rising to the level of *Bradley* and *Strickland* nor any deficiency in trial counsel's performance in failing to object to Fryback's trial testimony.

**{¶41}** Lee's first and second assignments of error are overruled.

III.

**{¶42}** In his third assignment of error, Lee contends that the trial court erred by not excluding the testimony of Evelyn Taylor because the state provided her name only three days prior to trial. Taylor testified that, while sitting in her home on the day of the crime, she witnessed a white vehicle with a Caucasian female driver and an African-American male passenger driving slowly towards Rowland Avenue.

**{¶43}** The trial court has discretion to select the proper procedure when a party fails to comply with a discovery order. Crim.R. 16(E) (3); *State v. Edwards*, 49 Ohio St.2d 31, 42, 358 N.E.2d 1051(1976), *overruled on other grounds* (1978), 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155(1978). "[T]rial courts are given much latitude in supervising pretrial discovery," *Edwards,* at 42. Their supervisory decisions will not be reversed but for an abuse of discretion. *State v. Parson*, 6 Ohio St.3d 442, 445, 453 N.E.2d 689(1983).

**{¶44}** To demonstrate an abuse of discretion, an appellant must show three elements. First, he must show that "the state's failure to disclose was a willful violation of

Crim.R. 16 or anything other than a negligent omission on its part." *Parson*, 6 Ohio St.3d. at 445, 453 N.E.2d 689. Second, appellant must demonstrate "how foreknowledge of the nondisclosed statement would have benefited him in the preparation of his defense." *Parson,* 6 Ohio St.3d at 445, 453 N.E.2d 689. Finally, appellant must demonstrate the prejudicial effect of the Crim.R. 16 violation. *State v. Cooper*, 52 Ohio St.2d 163, 177, 370 N.E.2d 725, 733(1977), *vacated on other grounds*, 438 U.S. 911, 98 S.Ct. 3137, 57 L.Ed.2d 1157(1978).

{¶45} In the case at bar, Lee agrees that the state's failure to provide Taylor's name sooner was not willful. Second, Lee has not demonstrated, or even alleged, how foreknowledge of the witness would have benefited him in the preparation of his defense. Taylor did not identify Lee as the passenger in the car. Finally, Lee could have, but did not, move for a continuance in order to have sufficient time to prepare for Taylor's testimony. "In the absence of such a motion, the trial court properly concluded that defense counsel was prepared to go forward at that time. The trial court had, pursuant to Crim.R. 16(E)(3), the discretionary power to make such a determination." *State v. Edwards,* 48 Ohio St.2d at 43, 358 N.E.2d 1051; *Accord, State v. Bidnost,* 71 Ohio St.3d 449, 457, 1994-Ohio-465, 644 N.E.2d 318.

{¶46} Accordingly, the trial court did not abuse its discretion in admitting the testimony even though it was not supplied until three days before trial.

{¶47} Lee's third assignment of error is overruled.

IV.

{¶48} In his fourth assignment of error, Lee argues the trial court erred when it allowed Shadonnica Grier to reference out of court statements made to her by Kiera

Hobbs and Asia Middlebrook when explaining why she asked Lee, "why did you do it?" during their phone conversation on September 24, 2014.

{¶49} After the Shadonnica Grier finished her testimony, there were two questions posed by the jurors. (6T. at 858) First, a juror wanted to know why she had asked Lee, "why did you do it?" (6T at.858) This juror also wanted to know why she would ask Lee that question.

{¶50} The trial court determined, over Lee's objection, that Ms. Grier could discuss her conversations with Ms. Hobbs for the limited purpose of explaining why she asked Lee "why did you do it?" (6T. at 859-860). The trial court then asked Ms. Grier why was she asking Lee "why did you do it" when Lee had never said anything to her about being involved in a murder. (6T. at 861). Ms. Grier's answered that after she had talked to Kiera Hobbs, she went to the Mansfield News Journal site and that site had talked about a white Cavalier being involved in a murder. (6T. at 861) Ms. Grier stated that she had known that that was the type of car that Lee was driving. The court asked Ms. Grier that as a result of talking to Kiera Hobbs, who had told her that a white Cavalier was involved in the murder, Ms. Grier made the assumption that Lee was involved in said murder. (6T. at 861). The trial court then told the jury that what someone had told Ms. Grier is hearsay, but that she is allowed to explain to the Jury why she said what she had said. (6T. at 862)

{¶51} In allowing Ms. Grier to discuss those conversations, the trial court mentioned that police officers are routinely allowed to reference out of court statements for the purpose of explaining their investigative actions. (6T.at 859). The trial court also

provided the jury a limiting instruction indicating that Ms. Hobbs statements were not to be considered for their truth.  (6T. at 861-862).

**{¶52}** In *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, the Ohio Supreme Court considered the standard to be applied in determining harmless error where a criminal defendant seeks a new trial because of the erroneous admission of evidence under Evid.R. 404(B).  The court summarized its analysis in the subsequent decision of *State v. Harris*, 2015-Ohio-166, ⸺ N.E.3d ⸺, ¶ 37:

> Crim.R. 52(A) defines harmless error in the context of criminal cases and provides: "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."  Under the harmless-error standard of review, "the government bears the burden of demonstrating that the error did not affect the substantial rights of the defendant."  (Emphasis sic.) *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 15, *citing United States v. Olano*, 507 U.S. 725, 741, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).  In most cases, in order to be viewed as "affecting substantial rights," "'the error must have been prejudicial.'  (Emphasis added.)" *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 7, *quoting Olano* at 734, 113 S.Ct. 1770.  Accordingly, Crim.R. 52(A) asks whether the rights affected are "substantial" and, if so, whether a defendant has suffered any prejudice as a result.  *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 24–25.

> Recently, in *Morris*, a four-to-three decision, we examined the harmless-error rule in the context of a defendant's claim that the erroneous

admission of certain evidence required a new trial. In that decision, the majority dispensed with the distinction between constitutional and non-constitutional errors under Crim.R. 52(A). Id. at ¶ 22–24. In its place, the following analysis was established to guide appellate courts in determining whether an error has affected the substantial rights of a defendant, thereby requiring a new trial. First, it must be determined whether the defendant was prejudiced by the error, i.e., whether the error had an impact on the verdict. Id. at ¶ 25 and 27. Second, it must be determined whether the error was not harmless beyond a reasonable doubt. Id. at ¶ 28. Lastly, once the prejudicial evidence is excised, the remaining evidence is weighed to determine whether it establishes the defendant's guilt beyond a reasonable doubt.

Id. at ¶ 29, *33*.

{¶53} The essence of the complained of testimony is that Grier connected Lee to the murder because of the white Chevrolet Caviler. Grier was not told by a third party that Lee had committed the crime. This evidence connecting Lee to the automobile was cumulative to the evidence presented by Kaitlyn Maher the owner of the white Chevrolet Caviler. Thus, it did not have any impact upon the jury's verdict.

{¶54} The state presented extensive evidence of Lee's guilt, specifically Ms. Robertson's testimony identifying Lee as the murderer and the white Cavalier as the vehicle used in the murder, Ms. Maher's testimony regarding Lee possessing the white Cavalier the day of the murder and asking her to drive him to Chicago the day of the murder, Ms. Fryback's testimony regarding Lee's DNA on the steering wheel of the white

Cavalier and on the black cell phone charger cord recovered from the murder scene and Detective Scheurer's testimony regarding Lee fleeing the state and being arrested in Mississippi.

{¶55} Based upon the entire record before us, we conclude that any error in the admission of the testimony was harmless beyond a reasonable doubt and if that error had not occurred, the jury would have made the same decision.

{¶56} Lee's fourth assignment of error is overruled.

{¶57} The judgment of the Richland County Court of Common Pleas is affirmed.

By Gwin, J.,

Farmer, P.J., and

Delaney, J., concur