[Cite as *State v. Taylor*, 2017-Ohio-7140.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case Nos.    16CA72 |
| DARRYL J. TAYLOR | : |          16CA73 |
|  | : |  |
| Defendant-Appellant | : |  |
|  | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Criminal appeal from the Richland County
Court of Common Pleas, Case Nos.
2014CR0788R & 2016CR0478R

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     August 4, 2017

APPEARANCES:

For Plaintiff-Appellee                 For Defendant-Appellant

GARY BISHOP                          R. JOSHUA BROWN
Prosecuting Attorney                 32 Lutz Avenue
By: JOSEPH C. SNYDER                 Lexington, OH 44904
Assistant Prosecutor
38 South Park Street
Mansfield, OH 44902

*Gwin, P.J.*

**{¶1}** Appellant, Darryl J. Taylor ["Taylor"] appeals his convictions for murder and tampering with evidence after a jury trial in the Richland County Court of Common Pleas.

*Facts and Procedural History*

**{¶2}** On August 12, 2014, an indictment was filed in the Common Pleas Court of Richland County, Ohio. Count One of the Indictment charged Taylor (aka) "Wheezy" with one count of Having Weapons While Under Disability in violation of R.C. 2923.13(A)(2), a felony of the third degree. Count Two of the Indictment charged Taylor with Receiving Stolen Property in violation of R.C. 2913.51(A), a felony of the fourth degree; the property involved being a firearm as defined in R.C. 2923.11. These crimes were alleged to have occurred between on or about May 9, 2014 and on or about July 7, 2014. The indictment was assigned Case Number 2014-CR-468.

**{¶3}** On October 23, 2014, a Motion to Suppress and/or Limine to Bar the Introduction of Evidence was filed on behalf of Taylor. This motion asked for an order excluding and/or suppressing all statements gained from the custodial interrogation of appellant "on or about July 9, 2014." (Sic) The interview actually occurred on July 7, 2014. The essence of the motion was that Taylor was not given Miranda warnings prior to his custodial interrogation in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution and Section 10, Article 1 of the Ohio Constitution. A hearing was held November 12, 2014. A Judgment Entry overruling Taylor's Motion to Suppress was filed November 19, 2014. On December 5, 2014, Taylor entered a no contest plea to both counts in Case Number 2014-CR-468.

{¶4} On December 8, 2014, an indictment was filed in Case No. 2014-CR-788, charging Taylor with murder. The murder was alleged to have occurred on or about July 7, 2014.

{¶5} Taylor filed a motion to withdraw his no contest plea in Case No. 2014-CR-468 on January 2, 2015. The trial court granted Taylor's request by Judgment Entry filed January 22, 2015. The state filed a motion for joinder requesting Case Numbers 2014-CR-468 and 2014-CR-788 (Murder indictment) be tried together. The trial court granted the motion to join the two cases.

{¶6} Case numbers 2014-CR-468 and 2014-CR-788 were eventually scheduled for trial on September 8, 2016. On August 29, 2016, Taylor again entered a no-contest plea to both counts in Case No. 2014-CR-468, Having Weapons While Under Disability and Receiving Stolen Property. The Court held sentencing in abeyance and Taylor proceeded to trial in Case No. 2014-CR-788 the Murder charge.

{¶7} On July 15, 2016, Taylor was indicted for Tampering with Evidence. The indictment was assigned Case Number 2016-CR-478. The date alleged was July 7, 2014.

{¶8} The Tampering with Evidence case and Murder case were joined. Taylor was found guilty by a jury of both counts.

{¶9} In Case Number 2014-CR-468 the court imposed a 24 month prison sentence on Count I for Having a Weapon While Under Disability and merged Count II with Count I. The 24 months imposed in 2014-CR-468 was to run consecutive to the sentence imposed in 2014-CR-788 [Murder] and 2016-CR-478 [Tampering with Evidence].

{¶10} As to the tampering with evidence charge, the trial court imposed a sentence of 36 months. As to the murder charge, the trial court imposed a sentence of 15 years to life and three years for the firearm specification. The sentences were ordered to run consecutively to one another.

*July 7, 2014: Bonnie Tittle Called To Report That Her Mother Deborah Hovestatd Had Been Shot.*

{¶11} Bonnie Tittle called 9-1-1 and spoke with Cynthia VanWagner-Alt, a dispatcher at the 9-1-1 center to report a shooting. The call came in at 10:13 a.m. Bonnie was the daughter of the shooting victim, Deborah Hovestatd. Cynthia asked Bonnie on multiple occasions who shot her mother. Bonnie steadfastly said she did not know. Cynthia asked Bonnie if the boyfriend shot her, and Bonnie replied no. Bonnie advised Cynthia that Taylor is the one that told her to call the police. The police interviewed Bonnie on two occasions on July 7, 2014, giving the same responses. However, on July 11, 2014, Bonnie told the police that she had been awoken by a gunshot and was standing by the front door with her daughter in her arms when Taylor came running down the hallway saying, "I accidentally just shot your mom."

{¶12} On July 7, 2014, Sergeant Gordon of the Richland County Sheriff's Office ["RCSO"] was dispatched to 1273 Kings Corners East Road in Richland County, Ohio in response to a report that there was a deceased person at that location. Upon Sergeant Gordon's arrival, he noticed several people in the area that were distraught/upset. Sergeant Gordon discovered a deceased D. H. lying on a bed covered up to the crown of her head with a comforter. D.H. had a gunshot wound in her mouth area. Her right arm was visible and in her hand laid a stainless steel .44 Magnum Ruger Super Red Hawk

gun.  After kicking the gun out of her hand for their safety, the officers discovered the wound to her face and a large among of blood.  When paramedics arrived, they pronounced her dead at the scene.

{¶13} Detective Duane Kilgore made a recommendation to contact BCI to process the scene.  Detective Kilgore testified he believed the scene looked suspicious, based on "the caliber, the large size of that gun, where it was placed..." (3T. at 385).  "I just felt that it was probably highly unlikely that gun would still be in her hand if she had shot herself." (3T. at 386).  Testimony was presented that the handgun would generally take two hands to operate due to a massive recoil.

{¶14} BCI Special Agent George Staley, Jr. arrived to process the scene.  Agent Staley waited for the arrival of a search warrant before entering 1273 Kings Corners Road.  Photos were taken, evidence gathered, and the scene was processed.  One of the items gathered was a comforter that was covering Deborah Hovestatd.  During the autopsy, a piece of white, fuzzy debris possibly from the comforter was removed from the decedent's mouth.

{¶15} The lead investigator for the Richland County Coroner's Office testified that he would expect to see certain things in a suicide so he looked for blood spatter, contact wounds, blood on the gun, and burn marks.  He expected to see more blood spatter in a suicide than was present at the scene.  He expected to see a significant contact wound, but did not find one on the decedent.  He expected to see blood on the gun; however only a small amount was found.  No stippling or burn marks were found on the decedent.

{¶16} Given the lack of a large deposit of nitrate on the comforter, the Richland County Coroner believed that the gunshot would have been fired a couple of feet away from the victim.

{¶17} In October 2014, a request was made for a contact shot to be performed for comparison purposes. The request involved the handgun and comforter that were taken into evidence. Agent Staley placed the comforter on a piece of cardboard inside the firearms range at BCI. The barrel of the gun was put directly against the comforter and the weapon fired. This was done to establish a standard of what the contact shot would have looked like. Staley opined the hole made from the contact shot is completely different from the one that was observed originally at the scene.

{¶18} Andrew Chappell of BCI examined the comforter. A section of the comforter that contained potential bullet holes was cut from the comforter for analysis. Contact shots were Chappell's initial focus as they are very distinctive. There is a burning or singeing of the fabric right around the hole, along with a tearing or ripping of the fabric in a star shaped pattern. Those characteristics were not found on the comforter examined by Chappell. The potential bullet holes were also processed chemically for nitrites and lead. Chappell described the distance between the barrel of the gun and the comforter as greater than contact.

{¶19} As one of the officers was writing his report, he was asked to take Taylor to the police station to give a statement. Taylor was sobbing constantly. When Taylor was sobbing, there were no tears and it appeared to be fake. However, when the police told Taylor to calm down and asked Taylor for his social security number he stopped sobbing and calmly gave it to them. A decision was made to conduct interviews with Taylor, Bonnie

Tittle and Shane Lambert.  Mr. Lambert was Deborah Hovestatd's son and had spent the previous evening at the residence.  All three were transported to the sheriff's office in separate law enforcement vehicles.  Interviews were conducted and all three were released.[1]

{¶20} At trial, Taylor produced an expert on crime scene analysis.  The state obtained their own expert on the subject.  Both experts offered competing testimony as to whether this was a suicide or a homicide.  The state's expert found that the crime scene had been "altered."

*Assignments of Error*

{¶21} Taylor presents three assignments of error for our consideration:

{¶22} "I. THE TRIAL COURT COMMITTED AN ERROR WHEN IT REFUSED TO GRANT APPELLANT'S MOTION TO DISMISS THE TAMPERING WITH EVIDENCE CHARGE IN CASE NO. 16-CR-478.

{¶23} "II. THE TRIAL COURT IMPROPERLY ALLOWED THE PROSECUTION TO PRESENT CHARACTER AND HEARSAY EVIDENCE TO PORTRAY APPELLANT AS VIOLENT.

{¶24} "III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ALLOWED STEPHANIE CORNER TO EXPRESS HER PERSONAL OPINION THAT WOMEN DO NOT SHOOT THEMSELVES."

---

[1] Taylor's statements to the police were the subject of the appeal in *State v. Taylor,* 5th Dist. Richland No. 16CA66, 2017-Ohio-4059.

I.

**{¶25}** Taylor argues that the state was aware of the facts that give rise to his indictment for Tampering with Evidence on December 17, 2014, the date that the state indicted Taylor on the murder charge in Richland County Court of Common Pleas, Case No. 2014 CR 0788. The state argues that it did not violate Taylor's right to a speedy trial because "[t]he new evidence that came to light was an expert's finding that the crime scene had been tampered with." [Appellee's Brief at 5].

**{¶26}** The Sixth Amendment to the U.S. Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...."

> Prior to conviction, the accused is shielded by the presumption of innocence, the "bedrock [,] axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law." *Reed* v. *Ross*, 468 U. S. 1, 4 (1984) (internal quotation marks omitted). The Speedy Trial Clause implements that presumption by "prevent[ing] undue and oppressive incarceration prior to trial . . . minimiz[ing] anxiety and concern accompanying public accusation [,] and . . . limit[ing] the possibilities that long delay will impair the ability of an accused to defend himself." *Marion*, 404 U. S., at 320 (internal quotation marks omitted). See also *Barker* v. *Wingo*, 407 U. S. 514, 532–533 (1972).

*Betterman v. Montana*, 578 U.S. __, 136 S.Ct. 1609, 1614, 194 L.Ed.2d 723(2016).

**{¶27}** The right to a speedy public trial is established in the Ohio Constitution, Article I, Section 10. "In any trial, in any court, the party accused shall be allowed to appear

and defend in person and with counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process to procure the attendance of witnesses in his behalf, and *a speedy public trial* by an impartial jury of the county in which the offense is alleged to have been committed * * *." (Emphasis added.) *See, State v. MacDonald*, 48 Ohio St. 2d 66, 68, 2 O.O.3d 219, 220, 357 N.E.2d 40, 42(1976).

{¶28} R.C. 2945.71 codifies a defendant's right to a speedy trial and provides the time within which a hearing or trial must be held for specific offenses.

{¶29} A person charged with a felony shall be brought to trial within 270 days after the person's arrest or the service of summons." R.C. 2945.71(C)(2). A person against whom one or more charges of different degrees, whether felonies, misdemeanors, or combinations of felonies and misdemeanors, all of which arose out of the same act or transaction, are pending shall be brought to trial on all of the charges within the time period required for the highest degree of offense charged. R.C. 2945.71(D). Each day an accused is held in jail shall be counted as 3 days. R.C. 2945.71(E).

{¶30} "Upon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code." R.C. 2945.73(B). "[S]uch discharge is a bar to any further criminal proceedings against him based on the same conduct." R.C. 2945.73(D).

{¶31} A speedy-trial claim involves a mixed question of law and fact. *State v. Larkin,* 5th Dist. No. 2004-CA-103, 2005-Ohio-3122. As an appellate court, we must accept as true any facts found by the trial court and supported by competent, credible

evidence. With regard to the legal issues, however, we apply a de novo standard of review and thus freely review the trial court's application of the law to the facts. Id. When reviewing the legal issues presented in a speedy-trial claim, we must strictly construe the relevant statutes against the state. *Brecksville v. Cook*, 75 Ohio St.3d 53, 57, 661 N.E.2d 706, 709(1996).

{¶32} In the case at bar, Taylor was indicted for murder on December 17, 2014. From the first moments of the case, the state was faced with a crime scene, which appeared to indicate that the decedent had committed suicide. She was found lying in bed with a handgun in her hand. Numerous police and investigators who testified at trial commented that the violent recoil of the particular handgun, which the state characterized throughout the trial as a "hand cannon," made it nearly impossible to fire with one hand. The obvious inference to be drawn is that the gun had been placed in the decedent's hand after she had been shot. Additionally, nearly every witness who observed the crime scene found it unusual that the comforter had been pulled up over nearly the entire head of the victim. Yet, no contact bullet holes or gunshot residue was found on the blanket. In fact, these discrepancies are what led the state to believe that the crime scene had been staged to look like a suicide. The addition of the state's expert witness did not involve any new "fact" simply a conclusion. The expert was not retained by the state at the start of the case, but only hired by the state to refute an expert hired by the defense. Yet from the beginning of the case, the state had to prove that Taylor shot the victim and that she had not committed suicide.

{¶33} Since the charges in the subsequent indictment for tampering with evidence stem from the identical facts that the state knew at the time of the murder indictment was

filed, the state was required to bring the accused to trial within the same statutory period as the original charge under R.C. 2945.71 et seq.  However, that does not end the inquiry.

{¶34} The time to bring a defendant to trial can be extended for any of the reasons enumerated in R.C. 2945.72, which provides:

The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following:

* * *

(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion.

{¶35} Extensions relating to the original charge, in this case Murder, apply to the latter indictment i.e., Tampering with Evidence.  *State v. Bickerstaff,* 9th Dist. Medina No. C.A. No. 1141, 1982 WL 2840(Nov. 17, 1982)[2], *citing State v. Bonarrigo,* 62 Ohio St.2d 7, 402 N.E.2d 530(1980).

{¶36} In Case No. 2014 CR 0788, Murder, Taylor was arrested on the indictment on December 12, 2014.  Taylor's case was scheduled for a jury trial on March 2, 2015. On February 26, 2015, Taylor filed a motion to continue the trial date.  The trial court granted the motion and tolled time until April 20, 2015.

{¶37} On April 7, 2015, Taylor filed a motion to continue the trial date.  The trial court granted the motion and tolled time to June 15, 2015.

---

[2] *Aff'd State v. Bickerstaff,* 10 Ohio St.3d 62, 461 N.E.2d 892(1984).

{¶38} On June 4, 2015, Taylor filed a motion to continue the trial date. The trial court granted the motion and tolled time until September 14, 2015.

{¶39} On August 26, 2015, Taylor filed a motion to continue the trial. The trial court granted the motion and tolled time until November 2, 2015.

{¶40} On October 9, 2015, Taylor's new trial counsel filed a motion to continue the trial. The trial court granted the motion and tolled time to February 1, 2016.

{¶41} On January 22, 2016, Taylor filed a motion to continue the trial. The trial court granted the motion and tolled time until April 18, 2016.

{¶42} At the final pre-trial conference held March 9, 2016, the trial court granted a continuance and tolled time to May 16, 2016.

{¶43} On April 20, 2016, Taylor filed notice of service of the report of his expert witness upon the state pursuant to Crim.R. 16(K).

{¶44} On May 10, 2016, the state filed a motion to continue the trial date. Citing the numerous continuances granted to the defense, the trial court granted the state's motion and tolled time until September 8, 2016.

{¶45} On July 15, 2016, the indictment was filed in Case No. 2016 CR 0478, Tampering with Evidence.

{¶46} On August 23, 2016, in Case No. 2014 CR 0788, Murder, the state filed a motion to join the Tampering with Evidence case with the Murder case.

{¶47} On September 2, 2016, the trial court granted the state's motion and joined Case No. 2016 CR 0478, Tampering with Evidence with Case No. 20114 Cr 0788, Murder.

{¶48} The jury trial in Case No. 2014 CR 0788, Murder and Case No. 2016 CR 0478 Tampering with Evidence commenced September 8, 2016.

**{¶49}** Thus, the time calculation is:

December 12, 2014 to February 26, 2015    77 days

February 26, 2015 to September 8, 2016    Time tolled

**{¶50}** Accordingly, Taylor was tried within the 270-day requirement set forth in R.C. 2945.71(C)(2).

**{¶51}** Taylor's first assignment of error is overruled.

II.

**{¶52}** In his second assignment of error, Taylor argues that the state was permitted to present other acts evidence that portrayed him as a violent person. Specifically, Brandi Andrews testified that two to three weeks prior to the incident she attend a cookout at which the victim and Taylor were present. The pair were arguing and at one point Taylor grabbed the victim's cell phone and threw it into the swimming pool. When Andrews later saw the victim inside the house, she had a red mark near her eye. Upon being asked what happened, the victim told Andrews that Taylor had struck her. (4T. at 629-630). Taylor objected to Andrews testifying as to what the victim told her. (4T. at 630).

**{¶53}** In general, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show action in conformity therewith." Evid.R. 404(B). "It may, however, be admissible * * * [to prove] motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id.

**{¶54}** A trial court has broad discretion in deciding whether to admit or exclude other-acts evidence. *See State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 67. Thus, ordinarily we defer to a trial court's evidentiary ruling unless the

court "has clearly abused its discretion and the defendant has been materially prejudiced thereby." *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967).

{¶55} Evidence that an accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit a crime, or that he acted in conformity with bad character. *State v. Morgan,* 12th Dist. Butler Nos. CA2013–08–146 and CA2013–08–147, 2014–Ohio–2472. However, there are certain exceptions that allow evidence of other acts of wrongdoing.

{¶56} R.C. 2945.59 provides,

> In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

{¶57} Also, Evid.R. 404(B) provides that evidence of other crimes, wrongs, or acts is permitted to show proof of motive, opportunity, intent, preparation, plan, knowledge, and identity, of the absence of mistake or accident. *State v. Kirkland*, 140 Ohio St.3d 73, 2014–Ohio–1966.

{¶58} The Ohio Supreme Court laid out a three-part test to determine if other acts evidence is admissible. *State v. Williams*, 134 Ohio St.3d 521, 2012–Ohio–5695. First,

the court is to "consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Id. at ¶ 20. Second, the court is to consider "whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B)." Id. Third, the court is to consider "whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice." Id.

{¶59} The state contends that the evidence was admissible to show Taylor's identity as the murderer of Hovestatd citing *State v. Griffin,* 142 Ohio App.3d 65(2001). In *Griffin,* the Defendant was indicted for murder and he too tried to argue that the victim had instead committed suicide. *Griffin*, 142 Ohio App.3d at 65. In *Griffin*, the state presented testimony from the Defendant's neighbors who observed him physically assault or threaten his wife in the weeks before her death. Specifically, evidence of other episodes in which Griffin had threatened to kill his wife with the same gun. Id. at 73. This information was found to be admissible other acts evidence to prove identity. The court in Griffin ruled that, "Identity is in issue when the fact of the crime is open and evident but the perpetrator is unknown and the accused denies that that [sic] he committed the crime." *Griffin* at 73.

{¶60} The court in *Griffin* noted that the Second District Court of Appeals reached the opposite conclusion in a murder versus suicide case. In *State v. Hawn,* 138 Ohio App.3d 449, 741 N.E.2d 594(2000), the defendant called the police to say that his girlfriend had just committed suicide. She had been shot in the chest. The trial court admitted extrinsic acts evidence that the defendant had injured her in the

past to prove his identity as her murderer. The appellate court reversed, concluding that the defendant's identity was not genuinely at issue:

According to the theory of the state's case and the evidence it presented, if the alleged crime took place at all, no person other than [the defendant] could have committed it. Further, [the defendant] did not claim that another person had murdered [the victim]. Instead, he denied that she was murdered at all. The only genuine issue, therefore, was whether [the victim] was murdered or whether she committed suicide. Because the identity of the perpetrator of the state's murder alternative was not in issue, evidence of [the defendant's] prior acts extrinsic to the operative facts of the crime alleged was not admissible ... to prove identity.

138 Ohio App.3d at 463. This was similar to the view expressed by the concurrence in *Griffin*. It concluded that the majority's reasoning in *Griffin* "confuses identity with culpability," and "a plea of not guilty with a genuine issue of identity." In a murder prosecution, the victim cannot be "another" suspected of the criminal act. And a defendant's claim that the victim committed suicide is refuted if the state meets it burden to prove that the victim died "as a result of the criminal agency of another." *Griffin,* 142 Ohio App.3d at 87.

{¶61} In the case at bar, the evidence that Taylor may have struck the victim is not the same as evidence that he threatened to kill her with the same gun used to shoot the victim as was true in *Griffin.* We believe the better-reasoned view is that the state had to prove that a crime was committed and if it succeeded then the defendant's identity as the perpetrator was certain.

**{¶62}** Regarding the test set out in *Williams*, we find that the trial court did abuse its discretion in admitting the evidence. First, the other acts evidence was of no consequence in the determination of what occurrences or facts were probable to exist. Second, the testimony was irrelevant to prove Taylor's identity. Third, the probative value of the other acts evidence was substantially outweighed by the danger of unfair prejudice.

**{¶63}** However, that does not end our inquiry. "[T]he real issue when Evid.R. 404(B) evidence is improperly admitted at trial is whether a defendant has suffered any prejudice as a result. If not, the error may be disregarded as harmless error. And while courts may determine prejudice in a number of ways and use language that may differ, they focus on both the impact that the offending evidence had on the verdict and the strength of the remaining evidence. Both the error's impact on the verdict and the weight of the remaining evidence must be considered on appellate review." *State v. Morris,* 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 25. In *State v. Harris*, 142 Ohio St.3d 211, 2015-Ohio-166, 28 N.E.3d 1256, the Ohio Supreme Court observed,

> Crim.R. 52(A) defines harmless error in the context of criminal cases and provides: "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Under the harmless-error standard of review, "the *government* bears the burden of demonstrating that the error did not affect the substantial rights of the defendant." (Emphasis sic.) *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 15, *citing United States v. Olano*, 507 U.S. 725, 741, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). In most cases, in order to be viewed as "affecting substantial rights," "'the error must have been prejudicial.' (Emphasis

added.)" *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 7, *quoting Olano* at 734, 113 S.Ct. 1770. Accordingly, Crim.R. 52(A) asks whether the rights affected are "substantial" and, if so, whether a defendant has suffered any prejudice as a result. *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 24–25.

Recently, in *Morris*, in a four-to-three decision, we examined the harmless-error rule in the context of a defendant's claim that the erroneous admission of certain evidence required a new trial. In that decision, the majority dispensed with the distinction between constitutional and non-constitutional errors under Crim.R. 52(A). Id. at ¶ 22–24. In its place, the following analysis was established to guide appellate courts in determining whether an error has affected the substantial rights of a defendant, thereby requiring a new trial. First, it must be determined whether the defendant was prejudiced by the error, i.e., whether the error had an impact on the verdict. Id. at ¶ 25 and 27. Second, it must be determined whether the error was not harmless beyond a reasonable doubt. Id. at ¶ 28. Lastly, once the prejudicial evidence is excised, the remaining evidence is weighed to determine whether it establishes the defendant's guilt beyond a reasonable doubt. Id. at ¶ 29, 33.

*Harris*, ¶ 36-37.

**{¶64}** In the case at bar, we find that Andrew's testimony concerning the incident between Taylor and the victim at the cookout did not influence the verdict, was harmless beyond a reasonable doubt and when excised the remaining evidence establishes Taylor's

guilty beyond a reasonable doubt. The jury had ample evidence that Taylor shot the victim and attempted to make it look as though she had committed suicide. At trial, the state presented expert testimony from BCI examiners, the coroner's examiner and an independent expert witness to establish that Taylor had shot Hovestatd. The other acts testimony was limited to one instance, was brief and was not so inflammatory as to prevent the jury from carefully reviewing all the evidence before arriving at their verdict. In fact, the jury found Taylor not guilty of aggravated murder.

{¶65} Taylor's second assignment of error is overruled.

III.

{¶66} In his third assignment of error, Taylor contends the trial court committed reversible error when it allowed Stephanie Comer to express her personal opinion that women do not shoot themselves.

{¶67} Evid.R. 701, which governs opinion testimony by lay witnesses, provides: "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." *See also*, *State v. McKee*, 91 Ohio St.3d 292, 297, 2001-Ohio-41 (2001).

{¶68} The distinction between lay and expert-witness opinion testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning that only specialists in the field can master. *State v. McKee*, 91 Ohio St.3d 292, 744 N.E.2d 737(2001).

{¶69} Comer is a paramedic with 18 years of experience. She also testified that

she put in roughly 2000 hours of training.  The paramedic said that she had responded to somewhere between 60 to 100 suicide calls.  In applying her years of experience and training, she was asked how the scene appeared to her.  She testified, "Women don't shoot … their selves [sic]."  2T. at 367.  The trial court ruled this statement was made based on her experience and training.

{¶70} Comer testified based upon her own perceptions and personal and work-related experiences.  There was nothing unreasonable, arbitrary, or unconscionable about the trial court's handling of the lay-opinion testimony in this case.

{¶71} Taylor's third assignment of error is overruled.

{¶72} The judgment of the Richland County Court of Common Pleas is affirmed.


By Gwin, P.J.,

Wise, John, J., and

Baldwin, J., concur