[Cite as *State v. Daniels*, 2021-Ohio-790.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2020-T-0022** |
| RYAN DANIELS, SR., | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Trumbull County Court of Common Pleas.
Case No. 2019 CV 00199.

Judgment: Affirmed.

*Dennis Watkins*, Trumbull County Prosecutor, and *Ashleigh Musick*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, Ohio 44481-1092 (For Plaintiff-Appellee).

*Stephen A. Turner*, Turner, May & Shepherd, 185 High Street, N.E., Warren, Ohio 44481 (For Defendant-Appellant).

MARY JANE TRAPP, P.J.

{¶1} Appellant, Ryan Daniels, Sr. ("Mr. Daniels"), appeals his conviction for reckless homicide with a firearm specification following a jury trial in the Trumbull County Court of Common Pleas.

{¶2} Mr. Daniels contends that the trial court erred by (1) permitting improper hearsay testimony at trial; (2) failing to hold a hearing on improper outside communication with jurors; (3) improperly considered his failure to make a damaging admission during

trial when sentencing him to the maximum period of incarceration; and (4) that the state failed to produce sufficient evidence to sustain his convictions.

{¶3} After a careful review of the record and pertinent law, we find as follows:

{¶4} (1) The record establishes that there was a danger that the jury would misuse the challenged out-of-court statement for the truth of the matter asserted rather than for a proper nonhearsay purpose. However, we find its admission to be harmless beyond a reasonable doubt because the declarant testified at trial, and there is overwhelming evidence of Mr. Daniels' guilt.

{¶5} (2) Mr. Daniels has not established a right to a bias hearing because the trial court did not learn of any actual improper outside communication with a juror. Further, Mr. Daniels has not established that the trial court abused its discretion in the scope of its voir dire to discover improper juror communication.

{¶6} (3) The record indicates that the trial court considered the substance of Mr. Daniels' trial testimony for the proper purpose of considering his absence of genuine remorse. Thus, Mr. Daniels has not clearly and convincingly established that his sentence is contrary to law.

{¶7} (4) The state presented sufficient circumstantial evidence, if believed, to establish beyond a reasonable doubt that Mr. Daniels caused the victim's death.

{¶8} Thus, we affirm the judgment of the Trumbull County Court of Common Pleas.

**Substantive and Procedural History**

{¶9} This case involves Mr. Daniels' fatal shooting of Britney Mazanec ("Ms. Mazanec") in the parking lot of the Hideaway Bar & Grill (the "Hideaway") located in Niles, Ohio.

2

### *The Shooting*

{¶10} On the evening of February 23, 2019, Ms. Mazanec and Meghan Tomlin ("Ms. Tomlin") were bar hopping with friends and ended their evening at the Hideaway. Mr. Daniels was separately bar hopping with his members of his social club and also ended his evening at the Hideaway.

{¶11} While at the Hideaway, Ms. Tomlin interacted with Mr. Daniels, who she knew by his nickname, "Smoke." According to Ms. Tomlin, Mr. Daniels showed her a gun he was carrying on his waist.

{¶12} Although Mr. Daniels had a permit to carry a concealed weapon, he denies carrying his gun at the Hideaway that night. According to Mr. Daniels, he and three other club members were employed as security at the Hideaway on weekends. He would carry his gun while working at the Hideaway, but he was not working that night. In addition, he had ridden with his friend Darnel (also known as Deon), who asked Mr. Daniels to disable his gun and place it in the vehicle's glove box while traveling because of Darnel's status as a convicted felon. Once they arrived at their destinations, Mr. Daniels would assemble his gun and place it back in the vehicle's glove box.

{¶13} When the bar closed around 2:30 a.m., Ms. Mazanec and Ms. Tomlin left the Hideaway. While walking to their vehicle in the parking lot, they got into a verbal altercation with some other women, including an unidentified blond woman who wanted to fight Ms. Tomlin.

{¶14} At their vehicle, Ms. Mazanec got in the driver's seat, and Ms. Tomlin got into the passenger seat. The other women were outside of the car. Ms. Tomlin rolled her window down about halfway because she was smoking a cigar. As she went to ash it,

somebody hit her in the face four or five times. Ms. Mazanec rolled up the passenger side window and attempted to drive away.

{¶15} Meanwhile, Mr. Daniels also left the Hideaway at closing and observed the verbal altercation. He arrived at Darnel's vehicle and began preparing his gun for transport. An individual named Steven Simpson ("Mr. Simpson") called Mr. Daniels over to Ms. Mazanec's vehicle to assist in breaking up a fight.

{¶16} Mr. Daniels rushed over to assist while holding his gun in his hand. While he was pushing people out of the way, Ms. Mazanec's vehicle proceeded in reverse and struck him. He tapped on the window twice with his gun to alert the driver to stop. On the second tap, the gun fired, shattering the glass of the passenger side window.

{¶17} Ms. Mazanec drove the vehicle a short distance and passed out. Ms. Tomlin put the car in park and called 911.

{¶18} Ms. Mazanec sustained a gunshot wound in her right upper arm. The projectile penetrated into her chest wall and went through both lungs and her aorta. Ms. Mazanec died from her injuries.

{¶19} According to Mr. Daniels, he believed the matter involved only damage to a vehicle. He and Darnel got into their car and drove away, and Darnel dropped Mr. Daniels off at his vehicle.

{¶20} On his way home, Mr. Daniels received a call from Mr. Simpson notifying him that someone may have been hurt at the Hideaway. Mr. Daniels eventually picked up Mr. Simpson and drove to the Hideaway.

### Investigation

{¶21} Detective Craig Aurilio ("Det. Aurilio") from the Niles Police Department was called to the Hideaway to investigate. Upon arrival, he observed two roped off crime

4

scene areas. An area in the front of the building contained Ms. Mazanec's vehicle with a broken-out passenger window. An area in the parking lot contained broken glass and a shell casing.

{¶22} Special Agent Dan Boerner ("Special Agent Boerner") from the Ohio Bureau of Criminal Investigation ("BCI") was called to the Hideaway to assist the investigation and process the crime scene. He observed and photographed a .45 caliber cartridge case found in the parking lot, the shattered passenger side front window of Ms. Mazanec's vehicle, and broken glass inside the vehicle.

{¶23} During the investigation, Mr. Daniels arrived at the Hideaway and spoke to the police. Det. Aurilio patted him down and noticed that he was wearing a belt and an empty holster. The police transported Mr. Daniels to the Niles Police Department to obtain a statement.

{¶24} Mr. Daniels waived his *Miranda* rights and provided oral and written statements. During the interview, Mr. Daniels was informed that Ms. Mazanec had died from a gunshot. Mr. Daniels admitting to having the gun in his hand and hitting the car window and that the gun went off.

{¶25} Det. Aurilio described Mr. Daniels as "evasive" with respect to the location of his gun. Later that day, Mr. Simpson brought Mr. Daniels' handgun to the Niles Police Department, which he indicated was found in Mr. Daniels' home.

{¶26} Dr. Todd Barr ("Dr. Barr"), a deputy medical examiner from the Cuyahoga County Medical Examiner's Office, performed an autopsy and removed a projectile from Ms. Mazanec's body.

{¶27} The Niles Police Department submitted the gun, projectile, and cartridge case to BCI. Jonathan Gardner ("Mr. Gardner"), a forensic scientist, examined and tested

5

the submissions. In his first report, Mr. Gardner identified the gun as a .45 caliber automatic manufactured by Bersa and determined that the cartridge case had been fired from it. However, the projectile was a .38 Special or .357 Magnum bullet. He did not examine the projectile because it was clearly not fired from the .45 caliber Bersa.

{¶28} Subsequently, Det. Aurilio contacted the Cuyahoga County Medical Examiner's Office, personally obtained the correct projectile, and hand-delivered it to BCI. In his second report, Mr. Gardner determined that this projectile was a .45 caliber bullet that was fired from the Bersa.

### Indictment and Pleas

{¶29} In April 2019, the Trumbull County Grand Jury indicted Mr. Daniels for reckless homicide, a third-degree felony, in violation of R.C. 2903.04(A)&(B), with a firearm specification pursuant to R.C. 2941.145 (count 1); involuntary manslaughter, a third-degree felony, in violation of R.C. 2903.04(B)&(C), with a firearm specification pursuant to R.C. 2941.145 (count 2); and illegal possession of firearm in liquor permit premises, a third-degree felony, in violation of R.C. 2923.121(A)&(E) (count 3). Mr. Daniels pleaded not guilty to the charges.

{¶30} At a plea hearing, Mr. Daniels withdrew his former pleas of not guilty and entered written and oral pleas of guilty to counts 1 and 3. The state agreed to dismiss count 2. The parties agreed to jointly recommend a sentence of two years in prison.

{¶31} The trial court engaged Mr. Daniels in a plea colloquy pursuant to Crim.R. 11 and found him guilty of counts 1 and 3. The trial court ordered a presentence investigation and set the matter for sentencing.

6

{¶32} Prior to the sentencing hearing, the trial court indicated in chambers that it was not going to follow the parties' joint sentence recommendation. As a result, Mr. Daniels withdrew his guilty pleas, and the case was set for a jury trial.

{¶33} Shortly before the trial date, Mr. Daniels' counsel filed a motion to withdraw based on Mr. Daniels' hiring of new counsel. Mr. Daniels also filed a motion to continue the trial date. The trial court issued a judgment entry denying both motions. Mr. Daniels appealed the trial court's judgment, and this court granted the state's motion to dismiss for lack of a final, appealable order in *State v. Daniels*, 11th Dist. Trumbull No. 2019-T-0079, 2019-Ohio-5314.

### Jury Trial

{¶34} The state moved to dismiss count 3, and the matter proceeded to a jury trial on counts 1 and 2.

{¶35} The state presented testimony from Ms. Tomlin, Det. Aurilio, Special Agent Boerner, and Mr. Gardner and read into the record the deposition transcript of Dr. Barr, who was unavailable to testify at trial. The state also presented several exhibits.

{¶36} Two particular events during the state's case-in-chief are relevant to Mr. Daniels' assignments of error.

{¶37} First, over the defense's hearsay objection, Det. Aurilio was permitted to testify regarding out-of-court statements Mr. Gardner made to him regarding the projectiles submitted to BCI for testing.

{¶38} Second, following a break at trial, defense counsel informed the trial court that some of the victim's family may have interacted with jurors. The trial court indicated it would "do further inquiry." Upon the jury's return to the courtroom, the trial court asked the jurors to raise their hands if anybody had attempted to interact with them. No juror

7

raised his or her hand. The trial court cautioned the jurors that no one was allowed to speak to or approach them and to report any such incident to the bailiff. It also cautioned the audience not to approach or attempt to talk to any juror or they could be held in contempt of court.

{¶39} Following the admission of the state's exhibits, the defense moved for acquittal pursuant Crim.R. 29, which the trial court denied.

{¶40} Mr. Daniels testified in his own defense. Relevant here, Mr. Daniels testified during cross-examination that he could not honestly say that he caused Ms. Mazanec's death. The defense also admitted two exhibits and rested. It renewed its motion for acquittal pursuant to Crim.R. 29, which the trial court denied.

{¶41} Following closing arguments and deliberation, the jury found Mr. Daniels guilty of both counts and both firearm specifications.

### Sentencing

{¶42} At the sentencing hearing, the trial court merged count 1 (reckless homicide) and count 2 (involuntary manslaughter), and the state elected to proceed to sentencing on count 1.

{¶43} Relevant to this appeal, the trial court referenced Mr. Daniels' cross-examination testimony prior to imposing his sentences, remarking that "[t]he fact that you refused to admit that it was your gun that killed Ms. Mazanec during the cross examination was equally insulting to the truth and to this Court."

{¶44} The trial court ordered Mr. Daniels to serve a prison term of 36 months on count 1 and a mandatory prison term of three years on the firearm specification to be served consecutive to the sentence on count 1, for an aggregate prison term of six years.

8

The trial court subsequently issued a judgment entry memorializing the jury's verdicts and Mr. Daniels' sentences.

{¶45} Mr. Daniels appealed and presents the following five assignments of error for our review:

{¶46} "[1.] The trial court erred when it permitted improper testimony by the detective as to a supposed mix-up or clerical error at the coroner's office.

{¶47} "[2.] The trial court erred when it failed to hold a hearing on improper outside communication with jurors.

{¶48} "[3.] The trial court erred when it improperly considered appellant's failuire [sic] to make an [sic] damaging admission when it sentenced the appellant to the maximum period of incarceration.

{¶49} "[4.] The state failed to produce evidence that was legally sufficient to sustain the verdict that appellant committed reckless homicide.

{¶50} "[5.] The state failed to produce evidence that was legally sufficient to sustain the verdict that appellant committed involuntary manslaughter."

**Hearsay Testimony**

{¶51} In his first assignment of error, Mr. Daniels contends that Det. Aurilio's testimony contained inadmissible hearsay.

***Standard of Review***

{¶52} This court has held that whether evidence constitutes inadmissible hearsay is a question of law subject to de novo review. *Morford v. Morford*, 2018-Ohio-3439, 118 N.E.3d 937, ¶ 12 (11th Dist.); *see State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 22 (holding that the admissibility of other-acts evidence pursuant to Evid.R. 404(B) is a question of law subject to de novo review). Reversal of a trial

9

court's ruling on evidentiary issues requires proof of material prejudice. *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 181.

### *Legal Standards*

{¶53} "'Hearsay' is "a statement, other than one made by the declarant while testifying at the trial or hearing, *offered in evidence to prove the truth of the matter asserted.*" (Emphasis added.) Evid.R. 801(C). Conversely, a statement is not hearsay when offered for a purpose other than to prove the truth of the matter asserted. *State v. Osie,* 140 Ohio St.3d 131, 2014-Ohio-2966, 16 N.E.3d 588, ¶ 118.

{¶54} However, the court has cautioned that "the well-worn phrase 'not offered for the truth of the matter asserted' is not a talismanic incantation that opens the door to everything said outside the courtroom." *State v. Ricks*, 136 Ohio St.3d 356, 2013-Ohio-3712, 995 N.E.2d 1181, ¶ 25, quoting *State v. Richcreek*, 196 Ohio App.3d 505, 2011-Ohio-4686, 964 N.E.2d 442, ¶ 26 (6th Dist.). Due to the potential for abuse of admitting statements to explain an officer's conduct during an investigation, such testimony must meet three requirements to be admissible. *Id.* at ¶ 22-23. "Testimony offered to explain police conduct is admissible as nonhearsay only if * * *: (1) 'the conduct to be explained [is] relevant, equivocal, and contemporaneous with the statements,' (2) the probative value of the statements is not substantially outweighed by the danger of unfair prejudice, and (3) 'the statements cannot connect the accused with the crime charged.'" *McKelton* at ¶ 186, quoting *Ricks* at ¶ 27. *See also State v. Maurer*, 15 Ohio St.3d 239, 263, 473 N.E.2d 768 (1984) ("[I]f a statement is offered for some purpose other than to prove the truth of the matter asserted, admissibility should be governed by the standards of relevancy and prejudice").

10

### Det. Aurilio's Testimony

{¶55} During the state's direct examination of Det. Aurilio, the following exchange occurred:

{¶56} "[THE STATE]: Now, as the Detective in this case, or one of the two Detectives, there was an issue regarding a projectile at some point; is that correct:

{¶57} "[DET. AURILIO]: There was.

{¶58} "[THE STATE]: Can you tell this jury what happened and what was subsequently done by your department?

{¶59} "[DET. AURILIO]: Sure. I received a call from Jonathan Gardner, I believe from BCI, he's the forensic person, stating to me that –

{¶60} "[DEFENSE COUNSEL]: Objection. Hearsay, Your Honor.

{¶61} "[THE COURT]: Do you wish to respond?

{¶62} "[THE STATE]: It's not offered for the truth of the matter. It's offered to show why he did what he did and what he did to correct the situation.

{¶63} "[THE COURT]: Overruled. You can answer.

{¶64} "[DET. AURILIO]: I was told that we submitted a projectile from the Cuyahoga County Medical Examiner's with respect to a .45 caliber. He stated that there was a mixup because we had a -- he had a .38 or a .357 projectile."

{¶65} Det. Aurilio further testified that he called the Cuyahoga County Medical Examiner's Office, was given the correct projectile, secured it into evidence, and shortly thereafter delivered it to BCI. He identified state's exhibit 3 as being that projectile.

{¶66} The state next inquired as follows:

11

{¶67} "[THE STATE]: And so any confusion or any mislabeling of items occurred at the Trumbull County Coroner's office, really had nothing to do with the Niles Police Department?

{¶68} "[DET. AURILIO]: Cuyahoga County.

{¶69} "[THE STATE]: I'm sorry. Cuyahoga County?

{¶70} "[DET. AURILIO]: Yes, correct."

{¶71} The state contended that Mr. Gardner's out-of-court statement was offered for the nonhearsay purpose of explaining Det. Aurilio's conduct. Therefore, we apply the three-part *Ricks* test.

### Evaluation of the Testimony

{¶72} Under the first *Ricks* requirement, the conduct to be explained must be relevant, equivocal, and contemporaneous with the out-of-court statement. *Id.* at ¶ 27.

{¶73} Here, Det. Aurilio's conduct was relevant, as it related to the chain of custody and testing of important physical evidence. It was equivocal, as it required an explanation as to why the police obtained two different projectiles from the medical examiner and submitted two different projectiles to BCI for testing. It was also contemporaneous to Mr. Gardner's out-of-court statement, as Det. Aurilio's conduct occurred shortly thereafter.

{¶74} Under the second *Ricks* requirement, the probative value of the out-of-court statement may not be substantially outweighed by the danger of unfair prejudice. *Id.* at ¶ 27. According to the Supreme Court of Ohio, the relevant inquiry is "'whether the risk that the jury will prejudicially misuse the content for its truth exceeds the probative value of the statement for the nonhearsay purpose.'" *Id.* at ¶ 25, quoting *Richcreek* at ¶ 26. "[T]he analysis of prejudice serves the ultimate question of whether the testimony was offered

12

for the truth of the matter asserted. Thus, if the testimony that is ostensibly offered to explain police conduct is more prejudicial than probative, the jury is more likely to rely on the testimony to prove the matter asserted, which tilts the particular testimony into hearsay." *Id.* at ¶ 26.

{¶75} We conclude that when considered in context, there was a danger that the jury would misuse Det. Aurilio's testimony concerning a "mixup" for the truth of the matter asserted, i.e., that the police submitted the wrong projectile to BCI.

{¶76} At trial, the state sought to establish that the medical examiner initially made a mistake with respect to the projectile. During its opening statement, the state told the jury that the medical examiner "initially submitted to BCI the wrong bullet from the wrong case;" "there was a mistake" at the medical examiner's office that "was basically like an accounting or clerical error"; and the police "were able to obtain the real bullet that was recovered." Obviously, conflicting evidence concerning the projectile, if unexplained, could create reasonable doubt as to whether Mr. Daniels was the shooter.

{¶77} As such, Det. Aurilio's testimony concerning a "mixup" related to a substantive fact at issue at trial. In addition, the state's subsequent inquiry regarding "confusion" or "mislabeling of items" at the medical examiner's office tied his testimony to the medical examiner's alleged mistake. Thus, Det. Aurilio's testimony could have encouraged the jury to misuse the content of the out-of-court statement as confirmation of the medical examiner's mistake rather than to explain why he subsequently obtained and submitted a different projectile.

{¶78} Accordingly, since Det. Aurilio's testimony concerning a "mixup" did not meet the second requirement of the *Ricks* test, it should have been excluded.

***Harmless Error***

**{¶79}** We next consider whether the admission of Det. Aurilio's testimony was harmless beyond a reasonable doubt. *See McKelton, supra*, at ¶ 190.

**{¶80}** Crim.R. 52(A) provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." *See also* R.C. 2945.83(C) ("No motion for a new trial shall be granted or verdict set aside, nor shall any judgment of conviction be reversed in any court because of: * * * [t]he admission or rejection of any evidence offered against or for the accused unless it affirmatively appears on the record that the accused was or may have been prejudiced thereby").

**{¶81}** According to the Supreme Court of Ohio, in determining whether an error is harmless beyond a reasonable doubt, the court must excise the improper evidence from the record and then look to the remaining evidence. *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 29. The cases where imposition of harmless error is appropriate must involve either overwhelming evidence of guilt or some other indicia that the error did not contribute to the conviction. *Id.* In reviewing the remaining evidence, the court's role is not to sit as the supreme trier of fact, but rather to assess the impact of the erroneously admitted testimony on the jury. *Id.*

**{¶82}** In this case, we find "some other indicia" that the error did not contribute to Mr. Daniels' conviction.

**{¶83}** The main premise behind the hearsay rule is that the adverse party is not afforded the opportunity to cross-examine the declarant. *State v. Primeau*, 8th Dist. Cuyahoga No. 97901, 2012-Ohio-5172, ¶ 69. Thus, this court and others have found the admission of hearsay to be harmless error where the declarant was also a witness and was examined regarding matters identical to those contained in the hearsay statements.

14

*See, e.g., State v. Arcuri*, 11th Dist. Trumbull No. 2015-T-0123, 2016-Ohio-8254, ¶ 60 (citing cases).

{¶84} Mr. Gardner, the declarant, testified at trial. During cross-examination, the defense elicited testimony from him regarding the two different projectiles submitted to BCI for testing. Mr. Gardner testified that both projectiles were submitted in envelopes indicating that they came from the body of Ms. Mazanec. He further testified that when he receives items for testing, he often does not know the underlying information. Thus, he did not read the autopsy report in the case and did not know which projectile actually came from Ms. Mazanec.

{¶85} In addition, during closing argument, the defense noted as follows:

{¶86} "They allege a mistake from the medical examiner's office. There's no clinician, no doctor, no representative, no human being from that office that came in here and testified that that was a mistake. That is their burden to prove that. Did you hear any testimony from any witnesses that talked about that? That's a problem. That's something that you have to weigh. That is reasonable doubt."

{¶87} Therefore, even if the jury had misused Det. Aurilio's testimony regarding a "mixup" as evidence that the medical examiner made a mistake, the defense ably challenged the trustworthiness of such an assertion.

{¶88} We also find overwhelming evidence of Mr. Daniels' guilt.

{¶89} There was no dispute that Mr. Daniels was holding a .45 caliber Bersa during the incident; the gun discharged when he tapped the passenger side window of Ms. Mazanec's vehicle; and the glass shattered. There was no evidence presented at trial that anyone else in the vicinity possessed, much less fired, a gun.

15

{¶90} A .45 caliber casing was collected at the scene, and Mr. Simpson provided Mr. Daniel's .45 caliber Bersa to the police. The medical examiner removed one projectile during the autopsy and, in his deposition, identified state's exhibit 3 as being the projectile he removed. Mr. Gardner testified that based on his testing, both the .45 casing and .45 projectile were fired from the .45 caliber Bersa. Although the state failed to present direct testimony from the medical examiner's office regarding a mistake, the evidence presented at trial compelled such a conclusion.

{¶91} Accordingly, we find the trial court's error to be harmless beyond a reasonable doubt.

{¶92} Mr. Daniels' first assignment of error is without merit.

**Juror Communication**

{¶93} In his second assignment of error, Mr. Daniels contends that the trial court erred by failing to hold a hearing on improper outside communication with jurors.

{¶94} The scope of voir dire used to investigate allegations of improper communication with members of the jury is within the trial court's sound discretion. *State v. Rice*, 11th Dist. Ashtabula No. 2009-A-0034, 2010-Ohio-1638, ¶ 36. An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004).

{¶95} The Supreme Court of Ohio has held that "[w]hen a trial court *learns* of an improper outside communication with a juror, it *must* hold a hearing to determine whether the communication biased the juror." (Emphasis added.) *State v. Phillips*, 74 Ohio St.3d 72, 88, 656 N.E.2d 643 (1995). "'In a criminal case, any private communication * * * with a juror during a trial about the matter pending before the jury is, for obvious reasons,

16

deemed presumptively prejudicial * * *. [T]he burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.'" *Id.*, quoting *Smith v. Phillips*, 455 U.S. 209, 215-216, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

{¶96} Mr. Daniels contends that the trial court's inquiry of the jury fell "well short of the hearing requirement set forth in *Phillips*." However, the record does not reflect that Mr. Daniel's right to a hearing under *Phillips* was implicated. The trial transcript indicates that following a break, defense counsel informed the trial court that some of the victim's family "*may* have been conversating" or were "*possibly* interacting" with the jurors while "in the same vending machine room," but he did not know which specific jurors. Upon the jury's return to the courtroom, the trial court asked the jurors to raise their hands if anybody had attempted to interact with them. No juror raised his or her hand. Since the trial court did not learn of any actual improper outside communication with a juror, it was not required to hold a hearing to determine potential bias.

{¶97} Mr. Daniels also contends that the trial court should have "immediately sought to identify the specific jurors and victim's family members said to be involved and inquired of them directly about any communication." However, this appears to be exactly what the trial court did by asking the jurors if anyone attempted to interact with them. No one was implicated as being involved.

{¶98} Accordingly, Mr. Daniels has not established an entitlement to a bias hearing or that the trial court abused its discretion in the scope of its voir dire.

{¶99} Mr. Daniels' second assignment of error is without merit.

**Sufficiency of the Evidence**

{¶100} We next address Mr. Daniels' fourth and fifth assignments of error, where he collectively challenges the sufficiency of the evidence supporting the jury's guilty verdicts for reckless homicide and involuntary manslaughter.

***Standard of Review***

{¶101} "'"[S]ufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990). "In essence, sufficiency is a test of adequacy." *Id.*

{¶102} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* at 259-260.

{¶103} When conducting a sufficiency of the evidence analysis, this court is to look at the actual evidence admitted at trial, both admissible and inadmissible. *State v. Rose*, 11th Dist. Lake No. 2014-L-086, 2015-Ohio-2607, ¶ 34. Further, a claim of insufficient evidence invokes a question of due process, the resolution of which does not allow for a weighing of the evidence. *Id.* at ¶ 33.

### Effect of Merger

{¶104} As indicated, at sentencing, the trial court merged both counts, and the state elected to proceed on the count for reckless homicide.

{¶105} A conviction requires both a guilty verdict and a sentence. *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 12. Since the trial court imposed no sentence for involuntary manslaughter, Mr. Daniels was not convicted of that offense. *See State v. Macko*, 11th Dist. Lake No. 2016-L-022, 2017-Ohio-253, ¶ 27. Courts have held in merged offense cases that where there is sufficient evidence supporting the conviction of the state's elected offense for sentencing, it is harmless error if there was insufficient evidence to support the offense that merged with the elected offense. *State v. Henderson*, 7th Dist. Mahoning No. 15 MA 0137, 2018-Ohio-5123, ¶ 9 (collecting cases).

### Reckless Homicide

{¶106} Mr. Daniels was convicted of reckless homicide in violation of R.C. 2903.041, which states that "[n]o person shall recklessly cause the death of another * * * *" and that "[w]hoever violates this section is guilty of reckless homicide, a felony of the third degree." He was also convicted of a firearm specification pursuant to R.C. 2941.145(A), which provides for a three-year mandatory prison term if "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that offender possessed the firearm, or used it to facilitate the offense."

{¶107} Mr. Daniels' argument is based on the existence of the two different projectiles submitted to BCI for testing. He contends that the jury did not have before it "any" evidence, much less sufficient evidence, "to resolve how two bullets could come

19

from one gunshot wound." Therefore, he argues that the jury could not determine beyond a reasonable doubt that Mr. Daniels' was the person who actually caused Ms. Mazanec's death.

{¶108} Mr. Daniels is correct that the state did not present any direct testimony establishing that the medical examiner's office made a mistake with regard to the first submitted projectile. However, the record contains sufficient circumstantial evidence from which the jury could infer that the first projectile was submitted to BCI in error.

{¶109} It is well-settled that "[c]ircumstantial evidence and direct evidence inherently possess the same probative value * * *." *Jenks*, *supra*, at paragraph one of the syllabus. Circumstantial evidence has been defined as "testimony not grounded on actual personal knowledge or observation of the facts in controversy, but of other facts from which inferences are drawn, showing indirectly the facts sought to be established." *State v. Marhefka*, 2016-Ohio-7158, 71 N.E.3d 1229, ¶ 22 (11th Dist.). An inference is "'a conclusion which, by means of data founded upon common experience, natural reason draws from facts which are proven.'" *Id.*, quoting *State v. Nevius*, 147 Ohio St. 263, 71 N.E.2d 258 (1947). It consequently follows that "when circumstantial evidence forms the basis of a conviction, that evidence must prove collateral facts and circumstances, from which the existence of a primary fact may be rationally inferred according to common experience." *State v. Windle*, 11th Dist. Lake No. 2010-L-0033, 2011-Ohio-4171, ¶ 34.

{¶110} In its case-in-chief, the state submitted the following evidence:

{¶111} Mr. Daniels was holding a .45 caliber Bersa during the incident. The gun discharged when he tapped the passenger side window of Ms. Mazanec's vehicle and shattered the glass. The police collected a .45 caliber casing at the scene, and a third party later provided Mr. Daniels' .45 Bersa.

20

{¶112} According to the autopsy report, Ms. Mazanec sustained a gunshot wound to her right arm and died after the projectile penetrated into her chest wall and went through both lungs and her aorta. The medical examiner removed one projectile during the autopsy. During his deposition, Dr. Barr identified state's exhibit 3 as being the projectile he removed.

{¶113} The police submitted the gun, projectile, and cartridge case to BCI for testing. In his first report, Mr. Gardner determined that the cartridge case had been fired from the .45 caliber Bersa but that the projectile was a .38 or .357 that was clearly not fired from the gun. As a result of a conversation with Mr. Gardner, however, Det. Aurilio personally obtained the correct projectile from the medical examiner's office and hand-delivered it to BCI. In his second report, Mr. Gardner determined that this projectile was a .45 caliber bullet that was fired from the .45 caliber Bersa.

{¶114} Contrary to Mr. Daniels' assertion, this evidence does not compel the conclusion that two bullets came from one gunshot wound. Rather, the jury could have reasonably inferred that the first submitted projectile did not actually come from Ms. Mazanec's gunshot wound and that the police subsequently obtained and submitted the correct projectile.

{¶115} Accordingly, the state presented sufficient evidence, if believed, to establish beyond a reasonable doubt that Mr. Daniels caused Ms. Mazanec's death.

{¶116} Since there was sufficient evidence supporting Mr. Daniels' conviction for reckless homicide, any error with regard to the merged offense of involuntary manslaughter is harmless.

{¶117} Mr. Daniels' fourth and fifth assignments of error are without merit.

**Sentencing**

{¶118} Finally, we address Mr. Daniels' third assignment of error, where he contends that the trial court erred by improperly considering his failure to make a damaging admission when it sentenced him to the maximum period of incarceration.

*Standard of Review*

{¶119} The standard of review for felony sentences is governed by R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 16. It provides as follows:

{¶120} "The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

{¶121} "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

{¶122} "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

{¶123} "(b) That the sentence is otherwise contrary to law."

{¶124} "'Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be

established.'" *Marcum* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469, (1954), paragraph three of the syllabus.

### Vindictiveness

{¶125} Mr. Daniels' argument is based on the trial court's statement to him at sentencing that "[t]he fact that you refused to admit that it was your gun that killed Ms. Mazanec during the cross-examination was equally insulting to the truth and to this Court." Mr. Daniels contends that the trial court's statement suggests its decision to impose the maximum sentence was improperly influenced, to some extent, on the fact Mr. Daniels asserted a defense that he did not cause Ms. Mazanec's death or that he would not incriminate himself. According to Mr. Daniels, this is not a proper purpose of felony sentencing under R.C. 2929.11.

{¶126} Mr. Daniels cites no case law in support of this proposition. However, we note that the Supreme Court of Ohio has held that "'[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort * * *.'" *State v. Rahab*, 150 Ohio St.3d 152, 80 N.E.3d 431, 2017-Ohio-1401, ¶ 8, quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d. 604 (1978). Thus, in *Rahab*, the court held that a sentence vindictively imposed on a defendant for exercising his or her constitutional rights is contrary to law. *Id.*

{¶127} When reviewing a sentence for vindictiveness, a court begins with the presumption that the trial court considered the appropriate sentencing criteria. *Id.* at ¶ 19. It then reviews the entire record, including the trial court's statements, the evidence adduced at trial, and the information presented during the sentencing hearing, to determine whether there is evidence of actual vindictiveness. *Id.* A court may reverse the sentence only if it clearly and convincingly finds the sentence is contrary to law

23

because it was imposed as a result of actual vindictiveness on the part of the trial court. *Id.*

### *Analysis*

{¶128} Our review of the record does not demonstrate evidence of actual vindictiveness on the part of the trial court in imposing sentence.

{¶129} The sentencing transcript demonstrates that the trial court made the challenged statement in the context of evaluating the trial evidence and commending the jury's verdict:

{¶130} "Ryan Daniels, you shot an innocent young lady and left her in the car to die. You wanted this Court and the jury to believe it was an accident, yet your actions demonstrate otherwise. You immediately fled the scene. You did not stay to help. You did not render first aid. You claimed you were unaware you discharged your .45 caliber handgun. You further claim you rode away thinking you only did property damage, yet this Court finds these claims are disingenuous and unsupported and belied by the evidence in this case.

{¶131} "A jury of your peers listened to all the witnesses and reviewed all the evidence. They also listened to your unbelievable, unrealistic and unsubstantiated testimony of you making a negligent discharge of your weapon.

{¶132} "Other than the inebriated recollection of Meghan Tomlin and your own self-serving testimony, there was not a single piece of credible evidence in this trial to support your version of the events on February 24th that led to the death of Britney Mazanec.

{¶133} "*The fact that you refused to admit that it was your gun that killed Ms. Mazanec during the cross examination was equally insulting to the truth and to this Court.*

24

The jury deliberated in this case wisely, saw through your testimony and rendered a true and just verdict." (Emphasis added.)

{¶134} Following these remarks, the trial court made several findings pursuant to R.C. 2929.12, including the following:

{¶135} "The Defendant is likely to commit future crimes of violence. Your performance at this trial clearly indicated to anyone who witnessed your testimony in this courtroom that you had no legitimate remorse for the killing of Britney Mazanec. It is necessary in this sentence to protect the public from future crime."

{¶136} A sentence is contrary to law if the trial court failed to consider the sentencing factors in R.C. 2929.12. *State v. Wilson*, 11th Dist. Lake No. 2017-L-028, 2017-Ohio-7127, ¶ 18. In addition, R.C. 2929.12(D)(5) requires the trial court to consider whether an offender "shows no genuine remorse for the offense" as a factor "indicating that the offender is likely to commit future crimes." Here, the record indicates that the trial court considered the substance of Mr. Daniels' trial testimony for the proper purpose of complying with its statutory duties under R.C. 2929.12.

{¶137} Accordingly, Mr. Daniels has not clearly and convincingly established that his sentence is contrary to law.

{¶138} Mr. Daniels' third assignment is without merit.

{¶139} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas is affirmed.

THOMAS R. WRIGHT, J.,

MATT LYNCH, J.,

concur.

25